**William E. OWEN,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–785A179.**

Court of Appeals of Indiana,
First District.

April 2, 1986.

Dennis E. Zahn, James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

William E. Owen appeals his conviction of theft, a class D felony.[1] We reverse and remand for a new trial.

---

1. Indiana Code section 35–43–4–2(a). Owen was fined $200.00 and costs, and sentenced to the Indiana Department of Correction for a term of two (2) years, all but ninety (90) days of which was suspended. For sentencing statute, see Indiana Code section 35–50–2–7.

## FACTS

At approximately 8:00 A.M. on January 7, 1984, Owen entered the Kroger grocery in Martinsville. While in the store, Officer Dan Newman of the Martinsville police department, who was off-duty and in civilian clothes and working as a security guard for Kroger's, observed Owen shoplift a package of lunch meat and some packages of cigars. Newman immediately informed Joe Jester, the store manager. Owen then proceeded through the check-out counter and out of the store. Upon being informed by the cashier that Owen had not paid for any cigars, Newman and Jester approached Owen and asked him to return to the store. Newman advised Owen that he was a Martinsville police officer and exhibited his police identification. Owen then accompanied Newman and Jester to an office about six feet by eight feet in dimension having no window and but one door. Knowing Owen to be a captain with the Indianapolis police department, Newman sent for Captain Shannon Buskirk of the Martinsville police department who was in the store and also was off-duty and in civilian clothes.

While in the office at the rear of the store, Owen was interrogated by both Jester and Newman. No *Miranda* warnings, see *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were given to Owen. Newman prepared a "shoplifting incident report" and requested Owen to sign it. This report, which Owen signed, constituted an admission of guilt. Testimony was also presented concerning oral admissions made by Owen. At the time Owen signed the incident report, Jester, the store manager, and both Officer Newman and Captain Buskirk were present in the office where Owen had been taken.

Newman testified that Owen at all times was free to leave, although Owen never was so advised, and that had Owen left Newman would not have stopped him. Jester testified that Kroger policy is not to detain shoplifters if they seek to leave. Again, this was never communicated to Owen. On the other hand, Owen testified he considered he was in custody, that he could not leave, and that if he did not sign the incident report, he would not be permitted to leave. Owen was permitted to leave by a rear exit after the statement was signed.

During the detention and interrogation, Owen produced the cigars, some cheese, and some packages of ham. Jester saw the packages of ham under a thin shirt then worn by Owen.

Owen's motion to suppress his oral and written statements and the shoplifting incident report for failure to follow *Miranda* safeguards, and his trial objections on the same grounds were denied.

## ISSUE

Because we reverse, we reach only the following issue:

Under the facts of this case, did the detention and interrogation of Owen constitute custodial interrogation by a police agency or in a police dominated atmosphere thereby requiring compliance with the *Miranda* procedural safeguards, and rendering inadmissible any written or oral statements obtained where no *Miranda* warnings were given?

## DISCUSSION AND DECISION

In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court prescribed certain warnings which must be given by the police to an accused prior to any custodial interrogation and declared inadmissible any statements obtained from such interrogation where the required warnings were not given. There are, of course, certain exceptions to the *Miranda* requirements. For example, general on the scene questioning in a noncoercive atmosphere to obtain the facts of a crime is not subject to the *Miranda* safeguards. *Hatcher v. State* (1980), 274 Ind. 230, 410 N.E.2d 1187; *Hoskins v. State* (1978), 268 Ind. 290, 375 N.E.2d 191; *Orr v. State* (1984), Ind.App., 472 N.E.2d 627, *trans. denied.* For example, an officer may ask routine questions for the purpose of obtaining basic identify-

ing information without giving *Miranda* warnings. *Hatcher.*

■■ The procedural safeguards of *Miranda* apply only to custodial interrogation, *Minneman v. State* (1982), Ind., 441 N.E.2d 673, *cert. denied* 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307; *Orr.* It is custodial interrogation, in a coercive atmosphere, by police officers or a police agency, seeking to elicit incriminating responses which triggers the necessity for *Miranda* warnings. Since the *Miranda* warnings need be given only in cases of custodial interrogation by police officers, it is clear that private citizens need not give *Miranda* warnings. *Luckett v. State* (1973), 158 Ind.App. 571, 303 N.E.2d 670. In *Luckett*, the private citizen victims of the crime who were not acting under police control or direction, obtained confessions from the perpetrator. This court held *Miranda* guidelines speak only to confessions given to law enforcement officers. *Miranda* warnings need not be given by civilians conducting their own investigation. *Id.*

■■ Thus, the principal issue which must be determined in this case is whether Owen was subjected to custodial interrogation by police officers or in a police dominated atmosphere. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Johnson v. State* (1978), 269 Ind. 370, 380 N.E.2d 1236. For a police interview to be custodial in a nonarrest situation, the interrogation must commence after the person's freedom of action has been deprived in a significant way. *Fowler v. State* (1985), Ind., 483 N.E.2d 739. On the other hand, merely because the questioning takes place at a police station, or because the person interrogated is a suspect, does not necessitate the giving of *Miranda* warnings. *California v. Beheler* (1983), 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275. In *Beheler* the statement was held admissible because the defendant had neither been taken into custody nor significantly deprived of freedom of action in any way.

Perhaps the significant fact in determining whether a person is in custody is whether he was free to leave at any time. In *Fowler*, the defendant was told he was not under arrest and was free to leave at any time. Hence, the interview was noncustodial. In *Armstrong v. State* (1982), Ind., 429 N.E.2d 647, the defendant went to the police station willingly. He was told he didn't have to answer and that he was not under arrest. Our supreme court found the defendant was not in custody. However, in *Armstrong*, the defendant was given the appropriate *Miranda* warnings. In *Orr*, the defendant was not under restraint either at the accident scene or at the hospital when he made incriminating statements. He was never told he was under arrest, and the statements were made in response to general questions which were not of an accusatory nature, and no coercive atmosphere existed. *Miranda* was held inapplicable. Where the questions are general and the defendant's freedom is not impeded, courts are less likely to find custodial interrogation took place. *Id.*

Our supreme court in *Johnson* determined that custody existed under these facts:

"The facts show that the arresting officers were directed to the appellant's location by witnesses who were present at the scene of the homicide. These witnesses informed the officers of appellant's address, identity and the fact that appellant was the perpetrator of the killing. Thus, when the three policemen arrived at Johnson's residence, their purpose was to apprehend the accused whom they suspected was guilty of the crime. In light of these facts, when the three officers confronted the appellant on the porch, appellant was deprived of his freedom of action in a significant way since he was clearly not free to leave. Appellant was thus in 'custody' as that term has been defined by *Miranda* and subsequent cases."

269 Ind. at 376, 380 N.E.2d at 1240.

■■ Here, Owen was directed by Officer Newman to accompany him and Jester to

the store office, a small room with only one door and no windows. Another police officer was summoned. Owen was detained[2] in this small room by two officers and the store manager. We consider this to be a coercive atmosphere. Although there was testimony by Newman that Owen was free to leave, and by Jester that Kroger policy was not to prevent Owen from leaving, this was never communicated to Owen. This is in stark contrast to the facts in *Armstrong* where the defendant was told he did not have to answer and was not under arrest, and *Fowler* where the defendant was told he was not under arrest and was free to leave at any time.

Here, Owen was never told he was free to leave, and although Officer Newman said he was, Owen testified he did not consider himself free to leave. However, the subjective thoughts of neither the officers nor Owen on this issue are controlling. The test in determining whether custody has attached is "whether a reasonable person, innocent of any crime, would have felt free to leave." *People v. Wroblewski* (1985), 109 A.D.2d 39, 489 N.Y.S.2d 797, 800. Under this objective standard, we believe the facts clearly establish that Owen was in custody when the interrogation occurred.

Having determined Owen was in custody, we next must decide whether he was interrogated by the police or in a police dominated atmosphere. The status of store security guards who detain and interrogate suspected shoplifters, particularly such security agents who are off-duty police officers,

has been the subject of a number of decided cases. The Fourth District of this court, in *Bowman v. State* (1984), Ind.App., 468 N.E.2d 1064, held that security officers, as private citizens, are not required to give *Miranda* warnings. In *Bowman,* a store clerk saw the defendants take a circular saw and informed the security officer, an off-duty policeman. The security officer apprehended defendants outside the store and asked if they had proof of purchase. He then took them back to the store where *Miranda* warnings were given, and called the police. There was no indication that the guard's status as a police officer was made known to the defendants. The court in *Bowman* allowed defendants pre-*Miranda* warning statements because they were not in custody. The *Bowman* court, however, in a footnote, stated that when police officers are acting as private security guards, they shed the cloak of state agency, are merely agents of the private employer and, therefore, no *Miranda* warnings need be given by them. This position is in conflict with our decision in *Tapp v. State* (1980), Ind.App., 406 N.E.2d 296, *trans. denied,* where we held, that for the purpose of the battery statute which increases the severity of the offense if the victim is a police officer engaged in carrying out his duties, such a security guard was indeed a police officer. In *Tapp,* we said:

"[I]t is the nature of the acts performed and not whether the officer is on or off duty, in or out of uniform, which determines whether the officer is engaged in

---

**2.** The detention was legal. Indiana Code section 35–33–6–2 gives a store owner or agent having probable cause to believe a theft has occurred by a specific person to detain that person for a reasonable time. The statute provides as follows:

"Indiana Code section 35–33–6–2. Probable cause for detention—Length of detention.—

(a) An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft may:

(1) Detain the person and request the person to identify himself;

(2) Verify the identification;

(3) Determine whether the person has in his possession unpurchased merchandise taken from the store;

(4) Inform the appropriate law enforcement officers; and

(5) Inform the parents or others interested in the person's welfare, that the person has been detained.

(b) The detention must:

(1) Be reasonable and last only for a reasonable time; and

(2) Not extend beyond the arrival of a law enforcement officer or two [2] hours, whichever first occurs."

the performance of his official duties. We hold, therefore, that the state proved that Officer Weisheit was a law enforcement officer engaged in the performance of his official duty for purposes of IC 35–42–2–1 when it proved that he was an Evansville police officer, displayed his police badge and announced his status to appellant Tapp, and informed her that she was under arrest pursuant to the laws of this state even though he was off duty, out of uniform, and employed as a security guard by a private employer." 406 N.E.2d at 302. In *Tapp*, we relied on the following cases achieving the same result interpreting similar statutes: *State v. Glover*, (1976), 52 Ohio App.2d 35, 367 N.E.2d 1202; and *People v. Barrett* (1977), 54 Ill.App.3d 994, 12 Ill.Dec. 624, 370 N.E.2d 247.

In *West v. State* (1978), 178 Ind.App. 522, 383 N.E.2d 398, a store manager was called to unlock the store where the defendant was hiding because the police were unable to gain entry. It was held that the manager was not acting as a police agent, hence no *Miranda* warnings were necessary because such is not required of private persons. Further, in *Owens v. State* (1971), 255 Ind. 693, 266 N.E.2d 612, a witness advised a store security officer that the defendant had shoplifted a sweater. The security officer followed defendant outside the store and asked if she had anything she had not paid for. Defendant answered that she had a blouse. She was placed under arrest and taken back to the store. When the store manager told the security officer the store would prosecute, the security officer gave the *Miranda* warnings. The court held the warning was timely and that the prior questioning was merely on the scene investigation. There was no indication whether the security officer was also a police officer.

An examination of cases from other jurisdictions leads us to conclude that a private security guard who is not acting as an agent of the police need not give *Miranda* warnings prior to interrogating one suspected of a crime, and a statement obtained by the security officer is not rendered inadmissible by failure to give the warnings. *United States v. Birnstihl* (9th Cir.1971), 441 F.2d 368; *Metigoruk v. Municipality of Anchorage* (1982), Alaska App., 655 P.2d 1317 (and cases cited therein); *City of Grand Rapids v. Impens* (1982), 414 Mich. 667, 327 N.W.2d 278; *People v. Ray* (1985), 65 N.Y.2d 282, 480 N.E.2d 1065, 491 N.Y.S.2d 283.

In *Metigoruk*, a store security officer obtained a statement from the defendant while awaiting arrival of the police. The court held no *Miranda* warnings were required. There was no indication that the store security officer was also a police officer. In *Ray*, the store security guard, who was not a police officer, interrogated the defendant and obtained a statement before a special police officer, also employed by the store, was called to the scene. The New York Court of Appeals held no *Miranda* warnings were required under those circumstances.

In the *Impens* case, a store security guard who also happened to be an off-duty deputy sheriff from another jurisdiction, observed Impens and others steal some merchandise. He informed another security guard. The suspects were taken to the security office, searched, and were interrogated. A written statement was obtained. No *Miranda* warnings were given prior to obtaining the statement. The Michigan Supreme Court reaffirmed the rule that "the exclusionary rule only applies if governmental intervention is shown." 327 N.W.2d at 280. The court further held that the status of the one guard, Cain, as an off-duty deputy sheriff did not render the statement inadmissible. The court said:

"We also do not believe that the fact that Rick Cain was an off-duty deputy sheriff is controlling. Cain's role in the proceedings was quite limited. He did not secure the statement and came on the scene after one of his colleagues had already observed Raush secrete one of the tapes. While Cain observed the activities of the three men and aided in

their apprehension, he identified himself as a Meijer employee. The incriminating statement was obtained by one of the other security guards. The mere presence of an off-duty deputy sheriff, particularly from another jurisdiction, is not a sufficient relationship to invoke the 'color of law.' theory noted above."

327 N.W.2d at 282. Thus, the Michigan court concluded: "We must conclude that in this case retail store security personnel who did not act at police instigation and functioned without police assistance and cooperation are to be regarded as private individuals." *Id.* at 282. It is significant, in our view, that Cain, the security guard in *Impens*, identified himself as a store employee rather than as a deputy sheriff. Thus, we think *Impens* is factually distinguishable from this case.

The New York Court of Appeals in *Ray*, holding the statement given prior to police participation admissible, stated:

"The 5th Amendment privilege against compulsory self-incrimination, which the *Miranda* warnings are designed to protect, has never been held to apply where a private store detective questions a person without any participation by the government. The avowed purpose of *Miranda* was to secure the privilege against self-incrimination from encroachment by governmental action. (*Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694.) In the absence of active governmental participation in a private investigation, no *Miranda* warnings need be administered. Private conduct, however, may become so pervaded by governmental involvement that it loses its character as such and invokes the full panoply of constitutional protections. [Citations omitted.]

.    .    .    .    .

"In our view, there was insufficient state involvement in the private shoplifting investigation at issue to create a police-dominated custodial atmosphere and, thus, the store detective was under no

duty to administer *Miranda* warnings to defendant."

480 N.E.2d at 1067, 491 N.Y.S.2d at 285.

The court, in *Ray*, then made the following relevant and significant observations:

"Critically important to our inquiry is a determination as to the moment of the entry of the police into the private shoplifting investigation. It is conceded that the special police officer, although an employee of Bloomingdale's, was contacted by a private employee of the store only subsequent to the apprehension and questioning of defendant. It was not until after defendant had signed the inculpatory statement, and the decision to prosecute defendant had been made by the store's assistant security manager, that the special police officer even became aware of the private investigation pending against defendant. For state action to exist, it must be demonstrated that official participation in the investigation at issue preceded, or occurred contemporaneously with, the signing or utterance of an inculpatory statement. For example, when police officers have actively participated in defendant's apprehension, exerted official power to restrain defendant, escorted defendant to the site of interrogation, and awaited the outcome of the privately conducted interrogation in close proximity to the place of questioning, a custodial atmosphere of the nature *Miranda* was designed to alleviate has been created. Under circumstances where police participation precedes or occurs contemporaneously with the private elicitation of inculpatory evidence, so as to create a coercive, custodial environment with the reasonable potential of infringing defendant's privilege against compulsory incrimination, the *Miranda* safeguards must be observed. Inasmuch as police participation in the instant case did not occur until *after* the inculpatory statement was signed, there was not threat of official coercion or compulsion, and the private store detective was under no duty to administer *Miranda* warnings. Thus, any store policy reflecting a practice of turning de-

fendant over to authorities *after* investigation and the decision to prosecute have privately been made is constitutionally immaterial and, in reality, simply consistent with the customary procedures involved in *all* citizens' arrests. [Citation omitted.]"

480 N.E.2d at 1068, 491 N.Y.S.2d at 286.

■ Here, Newman immediately identified himself to Owen as a police officer and showed his police identification. It is apparent that Officer Newman wished to use his status as a police officer and its attendant power. He summoned still another and higher ranking officer to the detention and interrogation scene. This created, in our view, a police dominated custodial atmosphere. The moment of police entry into the shoplifting investigation here was immediate and preceded the obtaining of the inculpatory statement. *Miranda* warnings were necessary. *Ray*, 480 N.E.2d at 1068, 491 N.Y.S.2d at 286. Owen was subjected to custodial interrogation by a police agency without the benefit of *Miranda* warnings. The warnings were required in this case and the failure to give them renders his statements inadmissible.

■ The state, however, argues that because Owen himself was a police officer and knew his *Miranda* rights, the failure to comply with the *Miranda* procedural safeguards is harmless. We cannot agree.

"Under *Miranda*, the duty of warning exists even if it may be assumed that the suspect knows his rights under the privilege against self-incrimination. In this respect, the court pointed out that the privilege is so fundamental to the American system of constitutional rule, and the expedient of giving an adequate warning as to the availability of the privilege so simple, that the court will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given; that assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation, whereas a warning is a clear-cut fact; and that, more important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows that he is free to exercise the privilege at that point in time. Also, although a warning that an indigent may have counsel appointed need not be given to a person who is known to have an attorney or is known to have ample funds to secure one, the court in *Miranda* pointed out that the expedient of giving a warning is too simple, and the rights involved too important, to engage in ex post facto inquiries into financial ability when there is any doubt at all on that score. Finally, under *Miranda*, no amount of circumstantial evidence that a suspect may have been aware of his rights will suffice to stand in the place of adequate warning of these rights. While this statement is made by the court only in respect to the duty of the police to inform a suspect, prior to interrogation, of his right to counsel, it may be fairly assumed that the same holds true of his right to be silent or his awareness of the fact that his statements may be used as evidence against him."

21 Am.Jur.2d, Criminal Law, section 792 (1981).

Further, in view of Owen's denial of guilt and his attempted explanation of his conduct, the credibility of which it is not our function to determine, we cannot say the verdict was not influenced by the inadmissible statements. The error, therefore, is reversible, not harmless.

Judgment reversed and cause remanded for a new trial.

ROBERTSON, P.J., and NEAL, J., concur.