Robert W. SLEEK, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 1185 S 468.

Supreme Court of Indiana.

Nov. 14, 1986.

Charles C. Rhetts, Jr., DeKalb County Public Defender, Auburn, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Following a jury trial appellant was convicted of Murder. The court imposed a sixty (60) year sentence.

The facts are: On October 14, 1984, the body of Pearl Lemper, who had been reported missing several days earlier, was found. Lemper died of stab wounds to the chest.

Police investigation led to the questioning of Lemper's neighbors, including appellant. A more comprehensive interview with appellant was held at the Butler Police Department on October 18. Appellant was advised of his rights prior to the questioning. At the conclusion of the interview, appellant agreed to take a polygraph examination.

The following morning appellant was transported to the Indiana State Police Post in Ft. Wayne by Indiana State Police Detective Thomas Stump and Detective Larry Kees of the DeKalb County Police Department. Before commencement of the polygraph examination, which was administered by Indiana State Police Officer J. Edward Littlejohn, appellant signed a polygraph waiver form which included a Miranda-type advisement of rights. Upon completion of the test, appellant inquired about the results. Littlejohn informed him that he had not been truthful. In response to questions posed by Littlejohn over an approximately one-hour period, appellant made several incriminating statements, including an admission that he had stabbed Lemper.

Littlejohn then turned appellant over to Detectives Stump and Kees, who had been listening over the intercom in an adjoining room. The detectives orally advised appellant of his Miranda rights. Appellant responded, "Well, [I] feel like I ought to have an attorney around." Several minutes later, without making any verbal response to Stump's further inquiries, appellant nodded his head, shrugged his shoulders and signed the waiver form.

Appellant then discussed the case with the detectives. After giving a confession, he showed them the area where he had disposed of a knife and several other items. In a subsequent search of the area, police officers did not find the knife, but did recover several items of physical evidence which were admitted at trial.

We find that the obtaining of a confession following appellant's request for an attorney constitutes reversible error. We thus confine our discussion to the issues concerning the admissibility of the confessions.

Appellant claims the trial court erred in denying his motion to suppress the incriminating statements he made to Officer Littlejohn following the completion of the polygraph examination. He argues that the results of the examination were used to coerce him and that in signing the polygraph waiver he consented only to taking the examination and not to making a statement. He further argues that because no mention could be made of the polygraph examination at trial he was denied an opportunity to cross-examine Littlejohn concerning the circumstances in which the statements were made.

The State has the burden to show beyond a reasonable doubt the voluntariness of appellant's confession. *Grey v. State* (1980), 273 Ind. 439, 404 N.E.2d 1348. In evaluating the issue of voluntariness, we look to the totality of the circumstances surrounding the confession including whether the statement was induced by any violence, threats, promises or other improper influence. *Carroll v. State* (1982), Ind., 438 N.E.2d 745.

In ruling on the motion to suppress, the trial court found that the questioning fol-

lowing the polygraph examination was not custodial interrogation. The court further found that appellant's will was not overborne as he had voluntarily submitted to the examination and upon the completion of the examination had inquired about the results.

We have previously held that a confession is not inadmissible simply because it followed a polygraph examination. *Carroll, supra; Grey, supra.* Appellant had agreed to take the polygraph examination and went voluntarily to the State Police Post. Prior to the commencement of the examination, he signed a waiver form which was denominated as a polygraph waiver but also included a *Miranda*-type advisement of rights. When the test was completed, appellant asked how he had done. Littlejohn informed him that the charts indicated he was not being truthful, then posed numerous questions concerning the circumstances of the instant crime.

■ Appellant's sole allegation of improper influence is an improper "use" of the polygraph results. He does not allege that Littlejohn falsified those results. Being truthfully told he failed the examination does not amount to coercion. *Carroll, supra.* While Littlejohn's assessment of the test results certainly may have influenced appellant's admissions, there is no indication that appellant was coerced or improperly influenced. *See Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844. Under these circumstances, the trial court was warranted in finding the confession was the product of appellant's free will. *Carroll, supra.*

■ The contention that appellant did not agree to make a statement is unavailing. As found by the trial court, he was not being subjected to custodial interrogation. He had, nevertheless, been advised of his rights and at no time did he attempt to terminate the conversation or ask to have an attorney present.

Appellant's corollary contention, that he was denied the opportunity to cross-examine Littlejohn about the circumstances of the confession, is also unavailing. Appellant declined the opportunity for cross-examination and therefore has presented no issue for appellate review.

Appellant asserts the trial court also erred in denying his motion to suppress the confession given to the detectives as well as the items of physical evidence recovered as a result. He argues that the confession was illegally obtained because Detective Stump continued to question him after he had requested the presence of an attorney. We agree with this contention.

After Officer Littlejohn returned appellant to Detectives Stump and Kees, Stump orally advised appellant of his *Miranda* rights and handed him a written waiver of rights form. As Stump was going over the form and asking appellant if he understood his rights, appellant made a statement concerning counsel. The pertinent portion of the tape of the interrogation, which was played to the jury, is as follows:

"Q. Okay. Waiver of rights. I have read this statement of my rights. I understand what my rights are. I'm willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I'm doing. No promises or threats have been made to me. No pressure of (sic) coercion of any kind has been used against me. Do you understand that part of it?

A. (No answer heard on the tape.)

Q. Okay. If you'd sign down here.

A. (Pause) Well, feel (sic) like I ought to have an attorney around—

Q. Want to fill us in on what you've talked to the other officer on? (Pause) We just want to hear basically what you've already told him.

A. Uh . . .

Q. Like he says, you've made that big step on things. And we want to try and help you out now and get everything straightened around like it should be.

A. (Pause) (Scratching noise can be heard on the tape.)

Q. Okay. Bob, I think you and he had discussed what happened on October the 5th, 1984. We weren't sittin' in there to hear all of it. We'd like to have you tell us in your words what you remember starting with Friday afternoon say about the time that...."

At the hearing on the motion to suppress, Detective Stump testified that after he asked appellant whether he wanted to talk to them about what he had discussed with Officer Littlejohn, appellant "sat there and thought it over for a minute," then "shrugged his shoulders and shook his head yes and went ahead and signed the form to indicate that he was willing go (sic) ahead and discuss what he had already talked with Littlejohn about." On cross-examination, Stump testified that he "believed if he wanted an attorney he wouldn't have went ahead and thought about it and signed it and talk (sic) to us and indicated that he ... was willing to talk."

█ The trial court found that the statement "[I] feel like I ought to have an attorney around" was ambiguous, as appellant was actually "thinking out loud," and thus appellant did not unequivocally invoke his right to counsel. The court found that even if appellant's statement were an unequivocal invocation of his right to counsel, appellant knowingly and intelligently waived that right by signing the waiver form before the officers actually began questioning him about the case. The court also found that because the questioning had not yet begun there was no need to readminister the *Miranda* warnings.

Under these circumstances, it is apparent that at the time the detectives began the interview appellant was being subjected to custodial interrogation. Under the Fifth and Fourteenth Amendments to the United States Constitution, a suspect has the right to the presence and advice of counsel during custodial interrogation by the police. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Moore v.*

*State* (1984), Ind., 467 N.E.2d 710, *cert. denied* (1985), 469 U.S. 1229, 105 S.Ct. 1229, 84 L.Ed.2d 366. When the right to have counsel is asserted, the suspect is not subject to further interrogation until counsel has been made available to him unless the suspect himself initiates further communication with the police and knowingly and intelligently waives the right previously invoked. *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Minnick v. State* (1984), Ind., 467 N.E.2d 754, *cert. denied* (1985), — U.S. ——, 105 S.Ct. 3512, 87 L.Ed.2d 642; *see also Oregon v. Bradshaw* (1983), 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405.

Appellant's statement "[I] feel like I ought to have an attorney around" was not inherently ambiguous and as such was sufficient to invoke his right to have counsel present. The State contends that in light of preceding events, in that appellant had been advised of his *Miranda* rights three times in a twenty-four hour period, had never invoked his Fifth Amendment rights and had already made several inculpatory statements, the statement was ambiguous. The State also contends that appellant's "remark" was more in the nature of appellant "questioning himself on what he should do" and that his subsequent actions in shrugging his shoulders and signing the waiver form indicated that he did not wish to consult with an attorney.

█ "[A]n accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel." *Smith v. Illinois* (1984), 469 U.S. 91, 92, 105 S.Ct. 490, 491, 83 L.Ed.2d 488, 491 (per curiam). Even if appellant's request was perceived to be inherently ambiguous, or equivocal in light of the preceding events, any further questioning should have been narrowly limited to clarifying whether appellant actually wished to have counsel present. *Thompson v. Wainwright* (5th Cir.1979), 601 F.2d 768; *Cannady v. State* (1983), Fla., 427 So.2d 723. An interrogating officer may not utilize the guise of clarification as a subterfuge for eliciting a waiver of a

previously asserted invocation of the right to counsel. *See Nash v. Estelle* (5th Cir. 1979), 597 F.2d 513 (en banc), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409; *State v. Robtoy* (1982), 98 Wash.2d 30, 653 P.2d 284.

 The questions and further statements, made after appellant invoked his right to counsel, went beyond the permissible scope of clarification. They must be interpreted to have been made in an attempt to evoke an incriminating response or to induce appellant to reconsider his invocation of the right to have counsel present. *See Moore, supra* at 712.

 As stated, the trial court found that even if appellant had unequivocally invoked his right to counsel, he knowingly and intelligently waived that right by nodding his head in an affirmative fashion and signing the waiver form. A valid waiver of the previously invoked right cannot be established by showing only that the suspect responded to further police-initiated interrogation. *Smith, supra; Edwards, supra.* The fact that questioning about the case had not yet begun is of no moment, for if a suspect "indicates in any manner and *at any stage* of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda, supra*, 384 U.S. at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707 (emphasis added).

We hold the second confession was inadmissible. Violations of *Miranda* are subject to harmless error analysis, *Malott v. State* (1985), Ind., 485 N.E.2d 879, the standard for such analysis being that the reviewing court must be able to declare that the constitutional error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

 We find that the admission of the illegally obtained confession does constitute reversible error. The first confession, which was properly admitted, was placed before the jury through the testimony of Officer Littlejohn. The jury heard the second confession on a tape which included appellant's admission in his own voice. Several items of physical evidence, which were recovered as a result of the tainted confession, were also admitted. We are unable to declare beyond a reasonable doubt that appellant's conviction does not rest, at least to some degree, upon the inadmissible confession.

The trial court is reversed and this cause is remanded for a new trial.

All Justices concur.