Cephis E. PASCO, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8908–CR–617.

Supreme Court of Indiana.

Dec. 12, 1990.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder and Felony Murder. The trial court merged the counts and sentenced appellant to a term of sixty (60) years.

The facts are: On August 4, 1988, Rosalie Chilleli, the victim, and her boyfriend, Gary Mullins, arrived at 1:00 a.m., at Buck's Tavern in Evansville, Indiana. Following an argument with her boyfriend, he left. Thereafter, the victim asked appellant for a ride home. Instead of going home, the victim and appellant drove to a secluded area of Vanderburgh County.

Appellant claims the victim encouraged him to engage in sexual relations with her. A fight ensued and appellant fatally stabbed the victim in the neck and crushed her skull with a tire rim. Appellant left the area, and the next day he returned to the scene to place her body on the edge of the road to be discovered. On August 5, 1988, the victim's body was discovered.

The police investigated the scene, and appellant was discovered to have been one of the last persons with the victim at the bar. They asked him to go to the station and while there, Officer Tom Wallis asked him to give any information concerning the victim. Eventually, Officer Wallis and appellant went to a restaurant for dinner, and upon returning at approximately 8:00 p.m., appellant told the officer that he left the bar a little before closing time, which was around 3:00 or 3:30 a.m. on August 4. However, Officer Wallis received information from another police officer that the bartender at Buck's Tavern was positive appellant left with the victim at 2:00 a.m. At this point, Officer Wallis viewed appellant as a suspect and advised him of his *Miranda* rights.

Appellant contends that, as a matter of law, one of his convictions should have been vacated because only one murder had occurred.

Appellant was convicted of murder and murder while committing the crime of rape. Appellant originally was sentenced to a sixty (60) year term of imprisonment on each count with the sentences to be served concurrently. However, the trial court amended its sentencing order as follows:

> "Court now corrects its sentencing of April 21, 1989, as follows. The guilty verdicts of murder, a felony as charged in Count I and Felony Murder, as charged in Count II is now merged and the Court now sentences the defendant to 60 years in the Indiana Department of Corrections."

Appellant claims the trial court erred in failing to vacate the murder conviction. When a jury returns a verdict finding the defendant guilty of two separate crimes resulting from a single killing, it is error for the trial court to allow both to stand as separate convictions. *See Smith v. State* (1989), Ind., 547 N.E.2d 817, *Rondon v. State* (1989), Ind., 534 N.E.2d 719, and *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731. In the latter two cases, the jury returned a verdict of guilty of both murder and felony murder. However, the trial judge in rendering judgment made no

statement of merger and allowed both convictions to stand. In the case at bar, the trial court at first entered an erroneous judgment. However, that error was corrected. Thus we see no reason to remand this case for a corrected judgment as we did in *Rondon* and *Martinez Chavez*.

Appellant argues there was insufficient evidence to sustain his conviction for felony murder (rape) because there was insufficient evidence on the element of penetration.

It is well established that evidence of the slightest degree of penetration of the female sex organ by the male sex organ is sufficient to sustain a rape conviction, and such penetration can be inferred from circumstantial evidence. *Brown v. State* (1982), Ind., 442 N.E.2d 1109. In addition, the fact-finder may infer penetration from circumstantial evidence such as the physical condition of the victim soon after the incident. *Id.*

To support his position, appellant cites *Goolsby v. State* (1987), Ind., 517 N.E.2d 54 as being parallel to the instant case. We note however that appellant's reliance on *Goolsby* does not support his position. In *Goolsby*, the defendant was convicted by a jury of attempted murder, rape, burglary, and battery. Defendant argued there was insufficient evidence on the element of penetration to sustain his rape conviction. The evidence revealed that the victim was knocked unconscious during the attack. She complained of tenderness in the vaginal area and believed she might have been raped. She informed hospital personnel of her belief and a doctor examined her shortly after the attack. He testified that her vagina appeared normal with no signs of forcible penetration. He also indicated that a small amount of non-motile sperm was discovered. He explained that most male sperm is motile for one to two days and the existence of non-motile sperm either meant that the male was abnormal or sexual intercourse had occurred two to three days previously. The victim had told the doctor that she had engaged in voluntary sexual intercourse approximately forty-eight hours before the examination.

Thus the only evidence presented was her testimony of tenderness in the vaginal area. On this issue, we reversed the trial court and directed that appellant be acquitted on the rape charge.

In the instant case, when the victim's body was discovered, it was unclothed and her legs were spread apart. In addition, appellant's palm print was found on the inside of the upper portion of the victim's thigh. Expert medical testimony revealed that a vaginal smear of the victim showed sperm. We cannot reweigh the evidence. From the evidence presented at trial, the trier of fact could have inferred appellant committed the rape. We find no error.

Appellant contends the trial court erred in denying his motion to suppress introduction of statements made by him. He asserts that his *Miranda* rights were not knowingly and intelligently waived and that his confession was caused by duress and coercion.

After discovery of the conflict of the time when appellant left the bar, he was viewed as a suspect and was advised of his *Miranda* rights. Upon advising appellant of his *Miranda* rights, an interrogation occurred. During this appellant stated that he understood his rights and that neither Officers Wallis nor Buchanan coerced or threatened him to give a statement nor was he under the influence of alcohol or drugs. During the interrogation, appellant was advised of his *Miranda* rights four times. After one of the advisements, the following conversation occurred between appellant and Officer Wallis:

"W: Cephis, you remember now, you have your *Miranda* Rights. Okay? Remember those *Miranda* Rights?

P: Hell no. Uh....

W: Do you want me to advise you again of your *Miranda* Rights?

P: Yeah.... I can't....

P: (inaudible) recommended signing it. I did.

P: That's all I can....

W: Okay. Allright [sic]. Before we ask you any questions you must under-

stand your rights. You have the right to remain silent. Anything you say can be used against you in Court. You have the right to talk to [a] lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer one will be appointed for you before questioning if you wish. If you decide to answer questions now, without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer. Do you understand what I've just said to you, Cephis?

P: Yeah.

W: Is that about the same rights that I read to you a while back?

P: Yes.

W: And did you not sign a waiver of those rights?

P: Yes.

W: Okay. Cephis. Do you understand completely what that means?

P: Yes. I want to help you all the best I can.

W: Okay. Cephis."

Following that advisement, Officer Wallis again repeated the *Miranda* warning, at which time appellant had the following exchange with the officer:

"P: I don't know what to do ... I don't know if I should stop or if I should get a lawyer.

W: Well, that's completely up to you Cephis.

P: I don't know what the hell to do, I mean. This is the first time with the law or anything ... I want to help you.

W: Okay.

P: That's the kind of guy I am. I ... I try to help anybody that needs help."

Thereafter appellant did admit to striking the victim with a tire rim and a screwdriver.

Prior to trial appellant filed a motion to suppress his confession claiming he did not knowingly and intentionally waive his *Miranda* rights. Instead, he claims the confession was caused by coercion and duress.

In support of his claim, appellant cites the above conversations.

During appellant's motion to suppress hearing, he testified that Officer Buchanan hit him and recommended he sign the *Miranda* waiver. He also stated he was unaware that he had a right to counsel during questioning. The trial court denied appellant's motion.

■ The admissibility of a statement or confession is controlled by determining, from the totality of the circumstances, whether it was made voluntarily and not through inducement, violence, threats, or other improper influences so as to overcome the free will of the accused. *Lyons v. State* (1987), Ind., 506 N.E.2d 813. The question of voluntariness is a question of fact for the trial court. *Townsend v. State* (1989), Ind., 533 N.E.2d 1215, *cert. denied*, — U.S. —, 110 S.Ct. 1327, 108 L.Ed.2d 502.

■ Appellant's argument that the reassuring of a suspect is an improper inducement has been addressed by this Court. *See Neal v. State* (1983), Ind., 447 N.E.2d 601; *see also Ward v. State* (1980), Ind.App., 408 N.E.2d 140. Appellant's contention in the present case is that Officer Buchanan's comment, "You're doing great. I'm proud of you," is an improper inducement. This comment in and of itself is too vague and indefinite to amount to an inducement. In fact, the officer's comments were made in response to appellant's statements: "I want to help you all the best I can," and "How I am doing?" We fail to find any merit in appellant's contention.

With regard to appellant's contention that he did not knowingly waive his right to counsel, he cites statements made during the confession to support his claim. These include: "I don't know what to do ... I don't know what the hell to do, I mean. This is the first time with the law or anything ... I want to help," and "I don't know what to do ... I don't know if I should stop or if I should get a lawyer." His claim is that these amounted to a clear request for the presence of counsel.

■ Under the Sixth and Fourteenth Amendments to the United States Constitution, a suspect has the right to the presence and advice of counsel during custodial interrogation by the police. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In *Miranda*, the United States Supreme Court stated the procedure once warnings have been given:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.

If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

    *     *     *     *     *     *

The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Id.* at 474–75, 86 S.Ct. at 1628, 16 L.Ed.2d at 723–24.

To support appellant's position, he cites *Sleek v. State* (1986), Ind., 499 N.E.2d 751. In *Sleek*, the defendant was convicted of murder and on appeal argued the trial court erred in denying his motion to suppress. The defendant argued that following a polygraph, he was advised orally of his *Miranda* rights to which he responded, "Well, [I] feel like I ought to have an attorney around." After several minutes passed without any verbal response to a detective's inquiries, the defendant nodded his head and signed the waiver form. We found under those circumstances the defendant's confession was illegally obtained because the detective continued to question him following his request for the presence of an attorney.

In addition, appellant cites *Smith v. Illinois* (1984), 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 to support his position. In *Smith*, the defendant, an 18-year-old, was taken to an interrogation room for questioning by two police detectives regarding an armed robbery. During the beginning of the session, the following occurred:

"Q. You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?

A. *Uh, yeah. I'd like to do that.*"

Following this response, the detectives did not terminate the questioning. Thereafter the defendant confessed to the crime. In reversing the Illinois Supreme Court, the United States Supreme Court held that "an accused's *post request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* at 100, 105 S.Ct. at 495, 83 L.Ed.2d at 496.

■ When the right to counsel has been asserted, the suspect is not subject to further interrogation until counsel has been made available to him unless the suspect himself initiates further communication with the police and knowingly and intelligently waives the right previously invoked. *See Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378.

■ Unlike *Sleek* and *Smith*, cited by appellant, he did *not* make a definite request for the assistance of counsel. In *Sleek*, the defendant, upon being advised of his *Miranda* rights, stated "Well, [I] feel like I ought to have an attorney around." Likewise, in *Smith*, the defendant responded to the question on his right to have counsel present by saying, "Uh, yeah. I'd like to do that." We find the instant case distinguishable from *Sleek* and *Smith*. In fact, appellant was advised of his *Miranda* rights numerous times prior to making his statements. Finally, when appellant was informed again of his rights, Officer Wallis responded to appellant by saying, "Well, that's completely up to you Cephis." In the instant case, appellant was apprised of, understood, and did not invoke his right to counsel. We find no error.

Appellant contends the trial court erred in failing to grant a mistrial after previously admitting his statements into evidence but subsequently hearing newly-discovered evidence that appellant's statements were given after becoming a suspect and before his *Miranda* rights were given.

The record reveals that during trial, defense witness Anthony Fitzgerald testified that he gave a statement to the police at approximately 8:00 p.m. on August 6 regarding the investigation. During cross-examination of Fitzgerald, the following occurred:

"Q. Did you later learn ... did someone else show up out there at the substation?

A. Yes, we did. I think it was Mr. Wallace [sic], when the other detective was there he said that he had to be excused for a minute because he wanted to get a picture of someone's truck he thought might have done it."

Later appellant moved for a mistrial contending that Fitzgerald's testimony indicated that Officer Wallis believed appellant to be a suspect at the time he first was questioned.

*Miranda* safeguards apply only to custodial interrogation. *Oregon v. Mathiason* (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714. In addition, *Miranda* requirements are not applicable to general on-the-scene questioning in a noncoercive atmosphere nor are *Miranda* warnings required where an officer asks routine questions for the purpose of obtaining basic identifying information. *Seeglitz v. State* (1986), Ind., 500 N.E.2d 144.

Custodial interrogation refers to questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Mathiason, supra; Johnson v. State* (1978), 269 Ind. 370, 380 N.E.2d 1236. To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. *See Staton v. State* (1981), Ind., 428 N.E.2d 1203.

To support his position, appellant cites *Owen v. State* (1986), Ind.App., 490 N.E.2d 1130. In *Owen*, the defendant entered a grocery store and was observed by an off-duty police officer shoplifting various items. When the defendant left the store without paying for the items, the officer and the store manager approached him and asked him to return to the store. The officer informed the defendant that he was a police officer and exhibited his identification. All three then went to an office approximately six feet by eight feet with no windows in it and were accompanied by another off-duty officer. The defendant then was interrogated by both officers but at no time was advised of his *Miranda* warnings. The defendant signed a statement admitting his guilt. Upon signing the statement, the defendant left the premises.

Unlike *Owen*, the instant case reveals that appellant voluntarily went to the police station for questioning regarding the crime. Officer Wallis testified that when he initially questioned appellant at approximately 6:30 p.m. he merely was asking appellant to relate any information he could concerning the victim. Officer William Roberts and Officer Rodney Buchanan testified that at the time of the interview, appellant was not a suspect, and he was free to leave. It was not until approximately 10:00 p.m. that Officer Wallis received pertinent information from another officer that appellant had left the tavern earlier than what he had told Officer Wallis. It was at this point that Officer Wallis viewed appellant as a suspect and advised him of his *Miranda* rights. We find *Owen* inapplicable to the instant case and find that the trial court did not err in denying appellant's motion for a mistrial.

Appellant alleges error on the admission of certain exhibits, claiming that all of these exhibits were derived from his illegally obtained statements and thus are inadmissible under the fruits of the poisonous tree doctrine. As discussed above, we found appellant's statement to be admissible. We find appellant's contention to be without merit.

Appellant contends the trial court erred in ruling on his motion *in limine* and objections presented during trial as to the opinion testimony of State's forensic entomologist Neal Haskell.

Dr. Laning Davidson, a forensic pathologist, testified that he conducted an autopsy on the victim's body, and during this process, he discovered fly and larvae formation on the body. Dr. Davidson took samples and placed them in containers. Officer Mike Hertwick stated he was dispatched to Deaconess Hospital in Evansville, Indiana on August 5, 1988 and transported four tubes containing the larvae samples to Purdue University. During his travel from Evansville to Purdue University, the package was never out of his custody, and upon arriving in Lafayette, he delivered the samples to the home of Cheryl Vail, a senior research associate in medical veterinarian entomology. She stated she opened the box and found four preserved samples and four live samples. Thereafter she placed the samples in a locked drawer in the laboratory. Both Officer Hertwick and Vail signed a chain-of-custody form.

Neal Haskell, employed by Purdue University in entomology and a consultant in forensic entomology, testified that Vail processed the samples because he was out of town. The samples were analyzed to determine an approximate time of the victim's death. Haskell did not presume to know about the particular case but did testify as to the time necessary for fly larva to appear.

Appellant objected to Haskell's testimony at trial claiming lack of materiality or relevancy, that Haskell was not qualified to be an expert, and that there was an insufficient chain of custody regarding this evidence. The trial court overruled these objections.

In *State v. Hall* (1982), Ind., 432 N.E.2d 679, 682 we stated:

"Relevancy is the logical tendency of evidence to prove a material fact. It is a question for the discretion of the trial judge and his decision will be reversed only where clear abuse is shown." (Citation omitted.)

We cannot say that Haskell's testimony was irrelevant. To the contrary, it was relevant in trying to establish the approximate time of death in view of the findings of Vail.

With regard to appellant's contention that Haskell was not qualified to testify, this Court in *Mihay v. State* (1987), Ind., 515 N.E.2d 498, 500 stated:

"The trial court has broad discretion in determining the qualifications of an expert witness and in admitting his opinion testimony. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1104. The witness must be qualified by knowledge, skill, experience, training, or education to give such testimony and the trial court must determine if its admissibility would aid the jurors in understanding the facts."

Haskell was employed with Purdue University as an entomologist and a consultant in forensic entomology. He had received a bachelor of science degree from Purdue University and was completing a master of science degree in forensic entomology at Purdue. In addition, he testified that he had on numerous occasions lectured as well as published articles in the area of forensic entomology. He also indicated that he was in various societies involving entomology. He had conducted approximately ninety forensic entomology examinations. The trial court did not err in finding Haskell to be qualified as an expert.

Appellant argues a lack of chain of custody with regard to this evidence. In order to show a proper chain of custody, the State is required only to present evidence which strongly suggests the exact whereabouts of the evidence at all times. *Gardner v. State* (1987), Ind., 514 N.E.2d 1261. If evidence is presented that the evidence passed through numerous hands, the State does not need to exclude all possibility of tampering but instead must provide reasonable assurance that the evidence remained in an undisturbed condition. *Simmons v. State* (1987), Ind., 504 N.E.2d 575. In addition, an argument based on lack of chain of custody which

does no more than raise the possibility of tampering, is without merit. *Arnold v. State* (1982), Ind., 436 N.E.2d 288.

■ Appellant's argument centers upon the testimony presented by Officer Hertwick and Cheryl Vail. Hertwick testified he received one box which contained four tubes while Vail testified that the box contained eight tubes. However, we note that the record contains Exhibit 68, a chain-of-custody form signed by both individuals. This form corroborates the testimony of Vail. We cannot say that this discrepancy amounts to a breakdown in the chain of custody. There is sufficient evidence in the record showing a proper chain of custody by the State. We find the trial court did not err in admitting Haskell's testimony.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.