Springer, by Next Friend, *v.* Byram *et al.*

---

No. 16,356.

Springer, by Next Friend, *v.* Byram et al.

SUPREME COURT PRACTICE.—*Superior Court.*—*Appeal From General Term.*—*Scope of Consideration.*—Where an appeal is taken from the decision of a superior court in general term, reversing the decision of special term, the Supreme Court is not confined, in its consideration of the case, to the particular points or reasons in the motion for a new trial, which the opinion of the court in general term shows were expressly considered by that court, and which that opinion shows were the basis of the action of the general term in reversing the judgment at special term; but, the assignment of error in general term being that the court in special term erred in overruling appellant's motion for a new trial, which was sustained as a whole, and not by piecemeal, this court may consider such assignment as a whole.

SAME.—*Variance Between Motion for New Trial and Bill of Exceptions.*—*Evidence.*—A slight difference between the phraseology of the motion for a new trial and that of the bill of exceptions, relating to a

statement of testimony offered to be proved, will not preclude a con_sideration of it, where the substance in each is the same.

EVIDENCE.—*Physician and Patient.*—*Communication Held in Presence and Hearing of Third Parties.*—*When Privilege Does Not Extend to Such Third Parties.*—If parties sustaining confidential relations to each other, as physician and patient, hold their conversation in the presence and hearing of third persons, whether they be necessarily present as officers or as indifferent bystanders, such third persons are not prohibited from testifying to what they heard.

SAME.—*Rules and Regulations, Notice of.*—*Passenger Elevator.*—*Damages.*—In an action for damages incurred by the plaintiff, a newsboy, while attempting to take passage in an elevator, it is competent to show that plaintiff was notified of the fact, prior to the accident, that newsboys were not allowed to ride in the elevator, and that he could not do so, the question of negligence being in issue.

From the Marion Superior Court.

*W. V. Rooker* and *H. Dailey*, for appellant.
*G. W. Stubbs* and *C. E. Averill*, for appellees.

DAILEY, J.—This is an action for personal injuries alleged to have been sustained by the appellant, while being transported in a passenger elevator in a public office building owned and operated by the appellees.

The facts disclosed by the record in this cause briefly stated are these:

In November, 1889, the appellees, Byram and Cornelius, were the owners of an office building situated on East Market street, in the city of Indianapolis. The north half of this building was four stories in height, including the basement, and the south half but three stories. The building was known as the "Thorpe Block," and was rented for office purposes to attorneys and persons of other occupations. Each half of the block was provided with convenient stairways, giving access to each floor of the block, and, in the north half, was also situated a passenger elevator, in use for the convenience and benefit of appellees' tenants, and also giving access to each of the four floors of the block. The elevator was

propelled by hydraulic pressure, and moved in a shaft built for that purpose, next to the west wall of the building. This shaft was separated from the halls, on the several floors, by sliding doors of open wire, the rest of the opening of the several halls being protected by either wirework or paneled woodwork. The elevator was operated by a person employed by the appellees for that purpose, who controlled its movements by means of a rope which opened and closed the valves of the hydraulic apparatus, and which passed through the car near the door of ingress and egress. The appellant, Harry M. Springer, was a boy of the age of twelve years and six months, attending the public schools and selling newspapers in the afternoons.

On the 23d day of November, 1889, the appellant was in the Thorpe block, and on what is known as the second floor, and attempted to enter the elevator. In making this attempt he fell partly upon the floor of the elevator, and was carried up and against the framework over the door, receiving injuries, to recover damages for which this action was brought.

Appellant's complaint is in three paragraphs: First. Charging negligence of defendants in the use of their property and premises, in the matter complained of. Second. Charging willful and wanton disregard of plaintiff's situation by the defendants, while he was on and using their property and premises. Third. Charging defendants with negligence as carriers of the plaintiff.

Each paragraph shows that plaintiff was rightfully on the premises, and each also charges a resulting injury to the plaintiff without his fault. A demurrer for want of facts was filed to the second and third paragraphs of the complaint, and overruled, and defendants answered in general denial.

Upon these issues the cause was tried at the March term, 1891, of the superior court of Marion county, before a jury, which returned a verdict for the appellant.

Appellees filed a motion for a new trial, which was overruled and judgment was rendered and entered on the verdict. From this judgment, at special term, appellees appealed to the general term of the superior court, where the judgment at special term was reversed for error in overruling appellee's motion for a new trial. From this judgment of reversal at the general term, the appellant has appealed to this court, and by proper assignment of error has presented for review the correctness of the decision of the court in general term in reversing the judgment of the special term, and directing a new trial of the cause.

From the opinion of the court in general term, it appears that the only question presented by the assignment of errors in general term, which was considered and determined by the court, was the action of the court, in special term, in overruling appellee's motion for a new trial. The overruling of that motion by the court, in special term, was held to be erroneous, and the assignment of error made in this court presents for review all matters properly assigned as errors in the motion for a new trial. Appellant's brief proceeds upon the theory that the only matters which this court can consider on this appeal are the particular points or reasons in the motion for a new trial, which the opinion of the court in general term shows were expressly considered by that court, and which that opinion shows were the basis of the action of the general term in reversing the judgment at special term. To this theory we can not give assent. Clearly it was not incumbent upon the court in general term, after it had found an error for which the judgment in special term should be reversed, to investigate

the sufficiency of the remaining reasons for a new trial, and pass upon the questions as to whether or not they were severally well taken. The instructions of the general term, as shown by its judgment, required the court, in special term, to sustain the defendant's motion for a new trial. This, we think, clearly indicates the error for which the judgment was reversed, and appellant's assignment of error, in this court, brings to us, for review, all the questions properly presented by appellees' motion for a new trial. In other words, the judgment of the court, in general term, sufficiently shows the decision of that court to have been that there was error of the court in special term, in refusing to sustain the motion, as stated, of the appellees for a new trial.

A new trial was ordered upon a consideration of the errors assigned by the appellees in general term, viz: "Third. The court, in special term, erred in overruling appellant's motion for a new trial of this cause."

The general term found this assignment of error well taken, and sustained it as a whole, not in piecemeal; and there was no ruling of the court in general term upon which these appellees had any reason to assign cross-errors. The questions presented to the general term were those presented by the assignment of errors in that court.

In the case of *Wesley* v. *Milford*, 41 Ind. 413 (416), it is said: "The appeal to this court being allowed from the judgment of the general term only, we think it must follow that whatever errors are assigned in this court must be predicated upon the assignment of errors in the general term, and the action of that court in general term thereon."

This being so, it is clear that the action of the court in general term, upon the errors assigned in that court, is what this court passes upon, and not the several and

particular matters which may have been embraced and covered by the assignments of error in the special term. To present to this court questions which were presented in the motion for a new trial, and to separate and set apart for the consideration of the court a portion of the reasons assigned in such motion, is equivalent to presenting to this court, for the first time, as grounds for reversal, matters which must be assigned as reasons for a new trial.

The appellant's assignment of error in this court, and his complaint here, is: "That said general term of said court erred in reversing the judgment of the special term of said superior court, and remanding said cause for another trial to said special term."

The question is not whether the reasons given by the court are sound or unsound, but, rather, upon a consideration of the matters presented by the assignment of errors in the general term, did the court reach a right conclusion and enter a judgment to which these appellees were entitled, upon the errors assigned in that court?

The first assignment in appellees' motion for a new trial embraces alleged errors of law occurring and excepted to by the defendants at the time, and comprised in subdivisions "A" to "S," inclusive.

The first three subdivisions each relate to the correctness of the ruling of the trial court in excluding the testimony of the two witnesses Scott and Goth, with reference to a conversation sought to be proved, between the appellant and Dr. Sutcliffe, in the ambulance, almost immediately after the accident, in the presence and hearing of the witnesses interrogated, in reference thereto, and included the statement of the appellant as to the manner in which his injuries were received. The objection to the offered testimony was sustained upon

Springer, by Next Friend, *v.* Byram *et al.*

the theory that it was incompetent to prove a conversation between a physician and his patient.

In defining who are incompetent to testify, section 497, R. S. 1881, reads:

"Third. Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases."

"Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

It has been held that communications made through a third person from a client to a solicitor, are privileged, if otherwise entitled to be so. Also, whoever represents a lawyer in conference or correspondence with the client, is under the same protection as the lawyer himself. The privilege extends to the attorney's clerk, interpreter, assistant attorney, or other agent while in the discharge of his duty. 19 Am. and Eng. Encyc. of Law, 131 and 132.

At common law, confidential communications made by a patient to a physician are not privileged. The common law in this State has been changed by statute. Am. and Eng. Encyc. of Law, *supra.*

It was said, in *Masonic Mut., etc., Assn.* v. *Beck*, 77 Ind. 203, that the object of these statutes seems to be to place the communications made to physicians in the course of their professional employment, upon the same footing with communications made by clients to their attorneys in the course of their employment.

"The privilege may attach, notwithstanding the presence of third persons in the sickroom, where the consultation is had." *Cahen* v. *Continental, etc., Ins. Co.*, 41 N. Y. Super. Ct. 296.

If the attending physician calls in another physician for consultation, the communications made to the latter

are privileged. *Ætna Life Ins. Co.* v. *Deming, Admr.*, 123 Ind. 384; *Raymond* v. *Burlington, etc., R. W. Co.,* 65 Iowa, 152; *Renihan* v. *Dennin*, 103 N. Y. 573.

Where there are two physicians, the patient does not, by calling one of his physicians as a witness, waive his privilege to object to the testimony of the other. *Penn, etc., Ins. Co.* v. *Wiler*, 100 Ind. 92; *Meller* v. *Missouri Pac. R. W. Co.*, 14 S. W. Rep. 758; *Record* v. *Village of Saratoga Springs*, 46 Hun (N. Y.), 448.

Communications made by a patient to his physician, for the purpose of professional aid and advice, are privileged, because intended to be private and confidential, and can never be divulged without the consent of the patient—it being the privilege of the patient, and not of the physician. The privilege of exemption from testifying to declarations made and facts actually known, is extended to a physician who derives his knowledge from the communications of a patient who applies and makes disclosures to him in his professional character. The immunity extends to all such facts, whether learned directly from the patient himself, or acquired by the physician through his own observation or examination. 7 Am. and Eng. Encyc. of Law, 508.

Neither can disclosures be made by other persons whose intervention is strictly necessary to enable the parties to communicate with each other.

In *Cotton* v. *State*, 87 Ala. 75, the court said: "The rule as to the inviolability of professional confidences applies, as between attorney and client, only to communications made and received for the purposes of professional action and aid, and the secrecy imposed extends to no other persons than those sustaining to each other the confidential relationship, except the necessary organs of communication between them, such as interpreters and their own agents and clerks."

Further it does not extend. It is settled law that if parties sustaining confidential relations to each other hold their conversation in the presence and hearing of third persons, whether they be necessarily present as officers or indifferent bystanders, such third persons are not prohibited from testifying to what they heard. *Cotton* v. *State, supra; House* v. *House,* 61 Mich. 69; *In re McCarthy,* 55 Hun, 7; *Commonwealth* v. *Griffin,* 110 Mass. 181; *Hoy* v. *Morris,* 13 Gray, 519; *Oliver* v. *Pate,* 43 Ind. 132 (142); Wharton Crim. Ev., section 398; 1 Lawson's Rights and Rem., section 147.

From the record, it appears that the witnesses Scott and Goth, whose testimony was rejected or excluded by the court, were employes of one C. E. Kregelo, an undertaker of the city of Indianapolis, who sent an ambulance to convey the appellant to his home, and these witnesses were in charge of it. It does not appear from the transcript, that they were in the employ of either the physician or the injured party, or that even their principal was attending him for hire. Scott and Goth were, for aught that appears, disinterested bystanders, and were competent to testify, and the weight of their statements was to be determined by the jury.

Counsel for appellant seek to shut out the consideration of this question because of slight differences between the phraseology of the motion for a new trial and that of the bill of exceptions, relating to the testimony offered to be proved by the appellees. The offer, on the trial, is in these words: "Now we offer to prove, may the court please, by this witness (Scott), that in the ambulance, in the presence of this witness and Dr. Sutcliffe and of Mr. Goth, this boy, the plaintiff in this case, stated that he attempted to get on the elevator while it was in motion, and that that was the way in which he got hurt, and, further, that nobody was to blame; *that*

*his brother said that nobody was to blame* except himself, that it was his own fault; that he tried to get on the elevator while it was in motion; and that he was playing in the halls at the time, and had been playing about the elevator."

The words, as made in the motion for a new trial, are: "We offer to prove   *   *   *   that in the ambulance, in the presence of this witness and Dr. Sutcliffe and Mr. Goth, this boy (the plaintiff in this case), stated that he attempted to get into the elevator while it was in motion; and that that was the way he got hurt, and, further, that nobody was to blame except himself; that it was his own fault; that he was hurt in trying to get into the elevator while it was in motion; and that he was playing in the halls at the time, and had been playing about the elevator."

In the late case of *Ohio, etc., R. W. Co.* v. *Stein,* 133 Ind. 243, 32 N. E. Rep. 831, it is said: "It is not the practice, and it is not incumbent on a party, in a motion for a new trial, to set out in detail a *verbatim* copy of the evidence admitted over objection, or offered and refused, or a *verbatim* statement of the objections made to its introduction. It is sufficient if the evidence be referred to with such certainty as to call the attention of the court to it, and to the ruling in relation thereto, so that the judge could not mistake the matter and the ruling alluded to and complained of by the party filing the motion."

We also cite *Clark* v. *Bond,* 29 Ind. 555 (557); *Meyer* v. *Bohlfing,* 44 Ind. 238 (239).

We think the statement of the offered evidence, in the motion for a new trial, was sufficiently explicit to inform the court of the question sought to be raised by the motion. The matter offered to be proved in the trial court, was not objectionable because it sought to incorporate a

statement of the brother, made in the ambulance, in the presence of the appellant.

If statements are made in the presence and hearing of a person, affecting his rights, and under such circumstances as call for a reply, what he said, or if he failed to say anything, may be proven as in the nature of an admission. *Pierce* v. *Goldsberry*, 35 Ind. 317; *Puett* v. *Beard*, 86 Ind. 104; *Surber* v. *State*, 99 Ind. 71; *Broyles* v. *State, ex rel.*, 47 Ind. 251; *Conway* v. *State*, 118 Ind. 482.

In 1 Rice on Evidence, p. 424, the author says: "The act or declaration of another person, and within the observation of a party, and his conduct in relation thereto, is relevant, if, under all the circumstances of the case, he would have been likely to have been affected by the act or the declaration."

Subdivision F calls in question the ruling of the court in sustaining the appellant's objection to the following question propounded to Earl Spain, a witness called on behalf of appellees: "If, at any time, say the week before the day he was hurt, he tried to get into the elevator, tell the jury what you said to him."

Appellees then offered to prove by the witness, in answer to the above question, that "about a week before this accident occurred, the appellant did try to get in, and asked to get in, the elevator, and was then told that he would not be allowed to; that newsboys were not allowed to ride in that elevator, and that he could not; and that he did, in spite of that injunction, get in, and was put out."

This evidence was excluded on the ground that it was not material and competent under the issues in this case.

The only issue tendered by the complaint was that of negligence. Under the allegations of the complaint

charging negligence, it was incumbent upon the appellant, in order to charge the appellees with a breach of duty toward him, to show that he was rightfully attempting to use the elevator in the Thorpe block. If his attempted use of that elevator was wrongful, then the only legal duty on the part of the appellees was not to wilfully injure him. If it was necessary for appellant to show that he was rightfully attempting to use the same, then, clearly, appellees had the right to have any evidence which tended to show that appellant was not rightfully engaged in its use, go to the jury, under the general denial.

It will be observed, from a reading of the several paragraphs of the complaint, that it charges these appellees as carriers of passengers with a breach of duty on their part, as such, in this, that "plaintiff was invited by the defendants to enter said elevator and be transported therein."

Under the issue tendered by the complaint, it was only necessary for the appellant to show an implied invitation on the part of the appellees for him to enter and be transported therein; and if this be true, then certainly it was competent for appellees to show that appellant was notified of the fact, prior to the accident, that newsboys were not allowed to ride in the elevator, and that he could not do so. If, as a matter of fact, he had been so warned; if he knew that appellees did not allow newsboys to ride in the elevator, in what respect was there a rightful attempt, on his part, to use the elevator contrary to the knowledge which he had? The mere fact that he was permitted to enter the building and ply his vocation of newsboy can not, alone, be held to bind the appellees to carry him in their elevator, whether they wished or not. It would be just as reasonable to conclude that if a person were admitted upon a train of

Springer, by Next Friend, *v.* Byram *et al.*

cars as a passenger, and provided with a passenger car, he could insist upon and be at liberty to ride in the baggage car or upon an engine, or occupy a berth in a sleeper without a permit. If the appellees had a rule with respect to their elevator, by which they required the person in charge to refuse its use to newsboys in the building, such a rule would have to be brought to the attention or knowledge of the boy, in some way, before he would be bound by such rule; but we think it is clear that after he has been apprised of appellee's rule to the effect that he can not' be carried in their elevator, it would be binding upon him. This rule has been uniformly sustained in the case of common carriers of passengers, and where a passenger has taken a position upon a train contrary to known rules of the carrier to the contrary, and has been injured in consequence of the violation of such rules, it has been held without exception, we believe, that there was no right of recovery. It has also been frequently held that where a person is invited to ride upon a train of cars, by an employe who had no authority to give such invitation, the party accepting the same was either a trespasser or a mere licensee, to whom the carrier owed no duty to exercise care. *Waterbury* v. *New York, etc., R. R. Co.,* 21 Blatchf. 314; *Eaton* v. *Delaware, etc., R. R. Co.,* 57 N. Y. 382; *Duff* v. *Allegheny, etc., R. R. Co.,* 91 Pa. St. 458; *Woodruff* v. *Bowen,* 34 N. E. Rep. 1113; *Pennsylvania R. R. Co.* v. *Langdon,* 92 Pa. St. 21; *Hickey* v. *Boston, etc., R. R. Co.,* 14 Allen, 429; *Gulf, etc., R. W. Co.* v. *Campbell,* 76 Tex. 174; *Faris* v. *Hoberg,* 134 Ind. 269; *Fluker* v. *Georgia, etc., Co.,* 81 Ga. 461; *Robertson* v. *New York, etc., R. R. Co.,* 22 Barb. 91; *Chicago, etc., R. W. Co.* v. *West,* 125 Ill. 320; *Cooper* v. *Lake Erie, etc., R. R. Co.,* 36 Ind. 336.

Under the issues, it was certainly a material fact which

the appellees had a right to show, whether or not this appellant had knowledge, a week before the injury, of the fact that newsboys were not allowed in the elevator. It tended to negative any proof he might have offered, showing he was rightfully attempting to ride at the time of the accident complained of, and also tended to show that as to any use of the elevator he was a trespasser.

The refusal of the court, at the special term, to admit this testimony, deprived appellees of a valuable element of their defense that there was no invitation to appellant to ride, and that he was not permitted to do so. It was harmful error to sustain appellant's objection to the question and exclude the evidence offered.

Subdivision "Q," of the first reason for a new trial, challenges instruction number 3, and, indeed, the whole series of instructions is criticised by the appellees, but this opinion has already been extended beyond the limits intended, and we will not consider the objections presented to the instructions.

We think the decision of the court in general term, reversing the judgment of the special term, correct, and it is affirmed.

