Patrick TERRY, Petitioner–Appellant,

v.

Eugene S. LeFEVRE, As Warden of the Clinton Correctional Facility, Respondent–Appellee.

No. 179, Docket 88–2246.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1988.

Decided Nov. 23, 1988.

**410**

Morgan Kennedy, New York City, for petitioner-appellant.

Jeanette Lifschitz, Asst. Dist. Atty., Queens County (John J. Santucci, Dist. Atty., Gary S. Fidel, Asst. Dist. Atty., Queens County, Kew Gardens, N.Y., of counsel), for respondent-appellee.

Before MESKILL, KEARSE and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

Petitioner-appellant Patrick Terry appeals from a judgment and order entered on May 9, 1988 in the United States District Court for the Eastern District of New York, Weinstein, J., which denied his petition for a writ of habeas corpus.

Terry sought relief from a sentence imposed after he was convicted of murder in the second degree, N.Y. Penal Law § 125.25(2) (McKinney 1987), attempted murder in the second degree, N.Y. Penal Law §§ 110.00, 125.25(1) (McKinney 1987), and criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03 (McKinney 1980), following a jury trial before the Supreme Court of the State of New York, Queens County, Browne, J. A codefendant, Donald Robertson, was acquitted of all charges. Terry received consecutive indeterminate prison terms of from twenty-five years to life on the murder conviction, eight and one-third to twenty-five years on the attempted murder conviction, and five to fifteen years on the possession of a weapon conviction. The Appellate Division reversed the attempted murder conviction and provided that the two remaining sentences run concurrently. *People v. Terry*, 104 A.D.2d 572, 479 N.Y. S.2d 278 (2d Dep't 1984). Leave to appeal to the Court of Appeals was denied.

Terry filed a petition for a writ of habeas corpus in the district court alleging, *inter alia*, that (1) his family's attempt to contact their attorney was frustrated, necessitating suppression of his subsequent confession and the murder weapon which was recovered following the arrest, and (2) the murder weapon and confession were obtained as a result of promises and inducements by the police. In denying the writ, the district court held that "there was no violation of *Miranda* rights at all, nor was there a violation of any Sixth Amendment independent rights here." J.App. at 255. In addition, the district court held that "there was no coercion at all." *Id.* at 257–58. Judge

Weinstein granted a Certificate of Probable Cause for an appeal.

For the reasons stated below, we affirm the district court's denial of the petition.

## BACKGROUND

On September 26, 1979, several Black people were standing in front of a bar in Queens, New York when gunshots from a passing car were fired at the group. One person was killed and another was injured. Based on several leads, the police suspected that Terry, who is White, was the assailant. On September 27, 1979, Terry was given his *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), and questioned by Detective James Donelan about the shootings. Terry denied any involvement in the incident. Subsequent investigation by Detective Donelan revealed that Terry had in fact been involved in the shooting.

On Saturday, September 29, 1979, at approximately 4:30 p.m., Detective Donelan and several police officers went to Terry's home, which he shared with his mother, a sister and her family. Terry was arrested and advised of his *Miranda* rights. He indicated that he understood each of those rights, and continued to proclaim his innocence. Terry and his mother signed an agreement consenting to a search of the premises, but the search failed to produce the murder weapon.

While the police were in the Terry home, Mrs. Terry started to look through a telephone book to locate the phone number of her attorney, Milton Jacobowitz. An unidentified police officer asked Mrs. Terry what she was doing. When she responded that she was attempting to reach an attorney, the officer said "[d]on't you know it's Saturday you can't reach him till Monday." Br. of Appellant at 5. Mrs. Terry then ceased attempting to call her attorney, but did call him at approximately 10:00 p.m. Saturday evening. Attorney Jacobowitz did not meet with Terry that evening, but agreed to meet Mrs. Terry the following day. By the following day, however, the critical events complained of on this appeal had already occurred.

Terry was taken to the police station and questioned late Saturday afternoon. At approximately 6:00 p.m., he agreed to appear in a police lineup without an attorney representing him. Two witnesses identified Terry as the assailant from this lineup.

Terry was later interviewed by Assistant District Attorney (ADA) Herold. Herold advised Terry of his *Miranda* rights, and Terry indicated that he understood his rights. The following exchange then occurred:

> Herold: Now that I have advised you of all of your rights, are you willing to answer questions without an attorney present?
>
> Terry: Are they gonna be the same questions that the officers asked me the last time?
>
> Herold: ... I'll tell you this; you can stop at any time. Does that make you feel more comfortable? Okay? All right. Let's go to Tuesday, the 25th, all right?
>
> Terry: Um hmm.

J.App. at 88. The petitioner then proceeded to answer questions, and recounted the same version of the facts that he had previously told to Detective Donelan, denying any involvement in the shooting.

While in custody, Terry became worried about being attacked by Black inmates at Rikers Island, the prison to which he would be sent, once the inmates became aware of the details of the crime charged. At approximately 10:30 p.m., the petitioner told Detective Donelan that he wished to make a deal with the police and that he could lead them to the murder weapon. In exchange for leading the police to the gun, Terry requested that (1) he be placed in a segregated cell away from Black inmates at Rikers Island, and (2) the person who was then in possession of the gun not be prosecuted. The police agreed to the conditions. Terry then led them to the murder weapon.

Terry was then taken back to the police station and again advised of his *Miranda* rights. He agreed to speak without an attorney present and admitted that the gun

that the police recovered was the one that he had used in the shootings.

## DISCUSSION

### A. *Miranda Rights*

■ The district court's determination that there was no *Miranda* violation in either Terry's questioning, his leading the police to the gun, or his confession, was not erroneous. It is clear that Terry was advised of his *Miranda* rights several times during the investigation, including once immediately before he made his confession. Terry never requested an attorney and was willing to speak without one being present. Additionally, Terry knew two days before his arrest that he was a suspect in the crime, thus he had ample time to contact an attorney if he so desired.

■ Mrs. Terry's attempt to contact an attorney did not constitute the invocation of Terry's right to counsel. The record does not show that Terry exercised his right to counsel by requesting that his mother try to reach an attorney. *See United States v. Lilla*, 534 F.Supp. 1247, 1279 (N.D.N.Y.1982). Although " '[we must] give a broad ... interpretation to a defendant's request for counsel,' " *United States v. Gotay*, 844 F.2d 971, 974 (2d Cir.1988) (quoting *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986)), there is no legal support for the argument that Mrs. Terry could invoke the right to counsel on behalf of her son. Absent a showing that Terry desired an attorney and directed his mother to obtain counsel for him, we conclude that Terry's right to counsel had not been invoked. Terry had the opportunity to either request an attorney on his own behalf or direct his mother to obtain an attorney for him. He declined to do either. Thus, there was no violation of his right to counsel.

■ Terry's contention that his Sixth Amendment rights were violated when the police told his mother that she would not be able to reach an attorney until Monday is without merit. The record is clear that the officer did not prevent Mrs. Terry from contacting an attorney or forbid her to do so. The officer merely noted that it would be difficult to reach an attorney at that particular time. The district court's finding that the officer's intention was to advise Mrs. Terry of facts, not to coerce her or prevent her from contacting an attorney, J.App. at 253, was not clearly erroneous. In fact, Mrs. Terry contacted her attorney later Saturday night.

Terry contends that he did not make a specific waiver of his right to counsel in response to ADA Herold's reading of his *Miranda* rights. Waiver of *Miranda* rights must be knowing, intelligent and voluntary, but once counsel is requested, all interrogation must cease until an attorney is present. *See Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). In the instant case, there was no specific request for counsel. As the district court noted, even if Terry's responses to ADA Herold's questions were equivocal requests for counsel, his *Miranda* rights were not violated. J.App. at 251. This Circuit has adopted the approach that "when a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." *Gotay*, 844 F.2d at 975. The district court found that ADA Herold made further inquiry and confirmed on the record that Terry did not desire counsel. The court found that "there really is no *Miranda* issue." J.App. at 251. We agree.

### B. *Coercion*

■ Terry argues on appeal as he did in the district court that Detective Donelan was the first to suggest the possibility that he could be seriously injured if he were taken to Rikers Island without being in protective custody. He claims that the police took advantage of his fear of being attacked and his desire for police protection to elicit the confession and the disclosure of the location of the murder weapon. Thus Terry contends that his actions were not voluntary but were coerced and that his

constitutional rights were violated. We disagree.

"[T]he test of voluntariness [of confessions] is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined.'" *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir.) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)), *cert. denied,* 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967). "Circumstances that support a finding of involuntariness may include 'the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as deprivation of food or sleep.'" *United States v. Guarno,* 819 F.2d 28, 30 (2d Cir.1987) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (citations and footnote omitted)).

Here, there is no support for the argument that Terry's confession was involuntary. He was twenty-seven years old at the time, and there was no showing of a lack of education or low intelligence. As noted earlier, Terry was repeatedly advised of his *Miranda* rights. There was no indication that the questioning was prolonged. Terry was not physically abused.

In concluding that there was no coercion present, the district court credited the testimony of Detective Donelan and found that Terry had approached the police first with the proposed deal to obtain protective custody in exchange for providing the police with a confession and the location of the gun. J.App. at 256. This finding was not clearly erroneous and will not be set aside. *Anderson v. Bessemer City, N.C.,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *Puritan Ins. Co. v. Eagle S.S. Co. S.A.,* 779 F.2d 866, 871 (2d Cir.1985). Terry was aware that he had committed a crime that had obvious racial overtones. He was also aware that Rikers Island had a substantial Black inmate population that would likely be incensed by his crime. Terry's fear of personal injury most likely originated from his own knowledge, experience and reflection, not from any exploitation by the police. Therefore, his confession was not rendered involuntary by his fear for his personal safety.

### C. Taped Telephone Conversation

Finally, Terry argues, relying on *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), that a tape recorded telephone call from his friend Arthur DeGraw made from the police station before Terry was arrested should have been suppressed because its use infringed upon his constitutional rights. The prosecution used the conversation in its cross-examination of Terry in order to impeach his credibility. The conversation showed that, contrary to Terry's direct testimony that he did not remember the shooting, he did in fact remember it and hoped that his participation would not be discovered by the police.

Because Terry failed to make this argument in the district court, we need not consider it on this appeal. The claim is frivolous in any event. Terry, unlike Massiah, had not been indicted when the recording was made, and he was also not then represented by counsel. Furthermore, DeGraw was not a police agent. He had gone to the police on his own, and called Terry only because Terry had asked him to call if he had any information about Terry's codefendant. Also, the tape was not played before the jury, nor was any reference made to it in open court. *Massiah* avails Terry nothing.

We have considered Terry's other arguments and find them to be without merit.

### CONCLUSION

The order of the district court denying the petition for a writ of habeas corpus is affirmed.