**Christopher S. RIDER,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–8912–CR–646.[1]

Court of Appeals of Indiana,
First District.

April 30, 1991.

Rehearing Denied June 17, 1991.

William Byer, Jr., Byer & Gaus, Anderson, for appellant-defendant.

1. This case was reassigned to this office on    January 8, 1991.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Christopher S. Rider appeals his conviction for Burglary [2], a Class B felony. We affirm.

## ISSUES

We restate the issues on appeal as:

1. Was Rider's right to counsel invoked effectively by his mother, thereby rendering his statements to police inadmissible at trial?

2. Did the trial court err in refusing Rider's motion to include criminal trespass on the verdict form as a lesser included offense of burglary?

## FACTS

On March 7, 1989, Carol Grimes left her home for a doctor's appointment. When she returned home, she found holes in the wall from two shotguns which were missing, plaster splattered everywhere, and her things torn up in every room. Officer Henderson investigated the burglary. Grimes remembered seeing Rider around her home frequently before the burglary. Officer Henderson went to Rider's residence on March 12, 1989, as part of his investigation.

Officer Henderson explained the circumstances to Rider and his mother. He informed both of them of Rider's rights because he believed Rider was a minor. After Rider and his mother talked privately, Rider's mother told Officer Henderson, "we need an attorney". Record at 283-83. Rider went upstairs for some clothes. Rider's mother informed Officer Henderson that her son admitted entering Grimes' house. She further stated that Rider was twenty years old.

When Rider returned, Officer Henderson read Rider the waiver of rights form again. After Rider signed the form, he told Offi-cer Henderson that he had entered Grimes' house and taken the rifle. After Rider spoke privately with his stepfather, his stepfather retrieved the rifle and gave it to Officer Henderson. Rider was then arrested. At the Madison County Detention Center, Rider was advised again of his rights. Rider proceeded to give a written statement concerning the burglary.

At trial, Rider orally moved to suppress Rider's oral and written statements, which motion was denied by the trial court. At the close of the evidence, Rider orally moved to amend the verdict form by adding the lesser included offense of criminal trespass. The court denied the request. The jury returned a guilty verdict for burglary. The court sentenced Rider to ten years' imprisonment.

## DISCUSSION AND DECISION

*Issue One*

█ Rider asserts the trial court erred in denying his motion to suppress evidence. Rider sought to exclude evidence of his statements made at his home to Officer Henderson and at the jail after his arrest. Rider maintains he was interrogated after he had exercised his right to counsel. However, the evidence shows Rider's mother, not Rider, stated, "We need an attorney". As an adult, Rider is the only one who can invoke his right to counsel.

In *McClaskey v. State* (1989), Ind., 540 N.E.2d 41, McClaskey claimed statements made to police should have been suppressed because she was denied access to Attorney Smith. However, our supreme court upheld the admission of the statements into evidence because McClaskey's grandmother had called Attorney Smith and sent him to the jail for McClaskey. McClaskey was unaware of her grandmother's actions at the time the statements were made. McClaskey had not hired Attorney Smith for her defense, nor had she requested an attorney. In fact, McClaskey specifically stated she did not want an attorney after she was informed Attorney

2. IND.CODE § 35-43-2-1.

Smith was at the jail to see her. The supreme court held the trial court did not abuse its discretion in finding the statements admissible. *Id.* at 44–45.

▪ Additionally, we note two federal cases which expressly support our holding that only the defendant can invoke his right to counsel. In *Terry v. LeFevre* (2d Cir.1988), 862 F.2d 409, 412, the court held a defendant's mother's attempt to contact an attorney did not constitute invocation of the defendant's right to counsel. The record in *Terry* failed to show the defendant exercised his right to counsel because Terry had not asked his mother to get him an attorney. The court further stated, "[T]here is not legal support for the argument that Mrs. Terry could invoke the right to counsel on behalf of her son." *Id.*

The second federal case supporting our decision is *U.S. v. Scarpa* (2d Cir.1990), 897 F.2d 63, 69, *aff'd*, 913 F.2d 993, *cert. denied*, —— U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32. In this case, an attorney tried to invoke the right to counsel for Scarpa although Scarpa was unaware his family had hired the attorney. The court held that the Sixth Amendment may not be invoked by an attorney unknown to the defendant and prevent the defendant from waiving his rights. Scarpa knowingly and voluntarily waived his right to counsel and made statements to the U.S. Marshal. *Id.*

Similarly, we hold Rider's mother could not invoke the right to counsel for her twenty-year old son. While at his home, Rider read and signed the waiver of rights form and stated he understood his rights. Rider then waived his rights and made statements to Officer Henderson. At the jail, Rider signed another waiver form and made further statements to the police. Rider did not request an attorney at any time, nor did he refuse to speak with the police until an attorney could be present. Therefore, we find the trial court properly denied Rider's motion to suppress his statements which were made voluntarily without counsel.

3. IND.CODE § 35–43–2–2.

*Issue Two*

▪ Rider argues the trial court erred by submitting the verdict form to the jury without including criminal trespass[3] as a lesser included offense of burglary. The trial court is required to instruct on a lesser included offense only if a two-step test is met. First, an offense may be included if: all the statutory elements of the lesser offense are inherently part of the statutory definition of the greater offense, *or* the charging instrument reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime. The second step requires that the evidence justify instructing the jury on the lesser crime. *Owens v. State* (1989), Ind., 544 N.E.2d 1375, 1377.

▪ Rider fails to satisfy either alternative in step one. Criminal trespass is not an inherently included offense of burglary, *Welch v. State* (1987), Ind., 509 N.E.2d 824 (citing *Goodpaster v. State* (1980), 273 Ind. 170, 402 N.E.2d 1239), nor does the information charge all of the elements of criminal trespass. The information did not allege "lack of contractual interest", one element of criminal trespass. Because the language of the information alleged only burglary, Rider could not maintain criminal trespass was an included offense in this case. *See Welch*, 509 N.E.2d at 824–25.

▪ Although Rider correctly argues that burglary requires proof of intent to commit a felony and where intent to commit a particular underlying felony cannot be established, criminal trespass is the appropriate charge, *see Justice v. State* (1988), Ind., 530 N.E.2d 295, 296, this argument is not helpful to Rider's case. The intent necessary for burglary may be inferred from circumstantial evidence, such as removal of property from the premises. *Id.* at 297. Rider's removal of the rifle from Grimes' home provides the intent to support the burglary conviction. Furthermore, we find the evidence supporting the charged offense is compelling and without serious conflict, and the trial court was

justified in refusing the lesser included offense on the verdict form. *See Owens*, 544 N.E.2d at 1377.

Affirmed.

BUCHANAN, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

Rider's right to counsel was effectively triggered by his mother's statement, made in his presence. When, during the police inquiry in their home, Rider's mother said: "We need an attorney", all questioning and attempts to acquire his signature on a waiver form should have ceased.

*Edwards v. Arizona* (1981) 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, set forth the clear principle that once a request for counsel has been made, questioning may not begin or must cease until counsel is present. The rationale underlying the rule and the benefits of it were recently discussed in *Minnick v. Mississippi* (1990) —— U.S. ——, 111 S.Ct. 486, 490, 112 L.Ed.2d 489:

> The merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application. We have confirmed that the *Edwards* rule provides " 'clear and unequivocal' guidelines to the law enforcement profession." *Arizona v. Roberson*, 486 U.S. 675, 682, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988). Cf. *Moran v. Burbine*, 475 U.S. 412, 425–426, 106 S.Ct. 1135, 1142–1144, 89 L.Ed.2d 410 (1986). Even before *Edwards*, we noted that *Miranda's* "relatively rigid requirement that interrogation must cease upon the accused's request for an attorney ... has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible. This gain in specificity, which benefits the accused and the State alike, has been thought to outweigh the burdens that the decision in *Miranda* imposes on law en-

forcement agencies and the courts by requiring the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis." *Fare v. Michael C.*, 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979). This pre-*Edwards* explanation applies as well to *Edwards* and its progeny. *Arizona v. Roberson, supra*, 486 U.S., at 681–682, 108 S.Ct., at 2098.

In the *Edwards* case, supra, the Supreme Court was careful to caution reviewing tribunals that it is improper to focus upon whether the incriminating statement has the indicia of voluntariness. The meaningful consideration is, rather, whether there has been a knowing and intelligent relinquishment of the right to counsel. 101 S.Ct. at 1884. Even before *Edwards*, in *Michigan v. Mosley* (1975) 423 U.S. 96, 96 S.Ct. 321, 325, 46 L.Ed.2d 313, the Supreme Court recognized that although a statement may be voluntarily given, it is inadmissible if *Miranda* protections are not afforded.

Whether the defendant has voluntarily and knowingly relinquished his right to counsel must be established beyond a reasonable doubt. *Moore v. State* (1984) Ind., 467 N.E.2d 710, *cert. denied* (1985) 469 U.S. 1229, 105 S.Ct. 1229, 84 L.Ed.2d 366; *Clark v. State* (1984) Ind., 465 N.E.2d 1090. This requirement gives some dimension to the application of the "totality of circumstances" test used to evaluate waivers.

As stated in *Fare v. Michael C.* (1979) 442 U.S. 707, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197:

> This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, ed-

ucation, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. See *North Carolina v. Butler, supra* [(1979) 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286.].

The crucial questions before us are whether the request of Rider's mother for counsel is the equivalent of a request directly from Rider himself; and whether such rights as may emanate from the request are thereafter waived by signature of a waiver form.

The majority opinion relies heavily upon *McClaskey v. State* (1989) Ind., 540 N.E.2d 41, in which the court admitted an incriminating statement when defendant's grandmother, unknown to defendant, had retained counsel. McClaskey had never requested counsel and in fact indicated during all of the four interrogation sessions that she did not desire representation. Even after being made aware that the attorney was present at the jail and wished to speak with her, she stated that she did not wish to do so. It is interesting to note, however, that only the statements made prior to her awareness of the attorney's retention were admitted into evidence. Our Supreme Court did not rest its decision upon the fact that counsel had been retained by a third person. The opinion was no doubt premised upon the fact that the defendant was unaware that counsel had been retained, but more importantly upon the fact that she had specifically and repeatedly stated that she did not want counsel. Were it otherwise, the Court would not have seen such great significance in the events which occurred during and between the four interrogation sessions. The Court would merely have said that a third party may not effectively trigger the right to counsel.

The two federal Second Circuit cases relied upon by the majority are similar in import. In neither of those cases did the defendant know that a third person had obtained or was attempting to obtain counsel. In *U.S. v. Scarpa* (1990 2nd Cir.) 897 F.2d 63, 69, *cert. denied* —— U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32, the court specifically stated:

> Having waived his constitutional rights, those rights could not be invoked by a third party or even by an attorney retained by a third party *without Scarpa's knowledge.*

> \*    \*    \*    \*    \*    \*

> It is also established that a defendant does not have to request an attorney in order to be entitled to one. *[Brewer v.] Williams*, [(1977)] 430 U.S. [387] at 404, 97 S.Ct. [1232] at 1242 [51 L.Ed.2d 424]. (Emphasis supplied).

It must be noted also that in *Scarpa,* he had waived his rights *before* counsel had been retained.

Likewise, in *Terry v. LeFevre* (2nd Cir. 1988) 862 F.2d 409, defendant's mother was temporarily dissuaded by the police from attempting to retain an attorney but the defendant had no knowledge of his mother's efforts and the subsequent retention and did independently and knowingly waive his right to counsel.

The same result obtained under similar circumstances in *Moran v. Burbine* (1986) 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410. Unknown to the defendant, his sister retained an attorney who called the police station and was assured that there would be no further questioning until the following day. Earlier, the defendant had refused to sign a written waiver form. Subsequently however, but still without knowledge that an attorney had been retained for him, defendant on three separate occasions signed a waiver form and gave statements implicating himself in the murder under investigation.

In *Moran,* Justice O'Connor, speaking for the majority, used language many times previously employed:

> If the individual *indicates in any manner*, at any time prior to or during questioning, that he wishes ... an attorney, the interrogation must cease.

106 S.Ct. at 1140. (Emphasis supplied).

The Court's holding which approved admitting the confession into evidence was that:

Events occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right.

106 S.Ct. at 1141.

The common thread running throughout all four cases is the lack of defendant's knowledge of requests or efforts of third parties on defendant's behalf. It is this lack of knowledge or participation in the counsel seeking process which gives consequence to an alleged waiver.

Here, the investigating officer, thinking the boy was a juvenile, advised the defendant and his mother jointly, thereby creating an atmosphere which promoted a unity of interests between parent and child. The required advisements were addressed to them at the same time. The mother's response, after counseling in private with her son, that "we need an attorney," was acknowledged by the officer.

The fact that Rider was not in fact a juvenile does not detract from the setting in which the events took place. The mother's use of the plural "we", was clearly inclusive of the defendant's needs and desires. The mother was in no way implicated as a potential suspect and had no need for an attorney in her own right. The situation is perhaps not unlike that in which, because of the closeness of the relationship between husband and wife, the statement of one in the presence of the other, becomes the statement of the latter by silent assent and adoption. 8 *Wigmore, Evidence* § 2338 (McNaughton Rev.1961).

A child and parent have a comparable relationship. That relationship in its basic nature and effect does not change merely because the child reaches his eighteenth birthday. In most instances, the relationship still produces an environment in which, when the parent and child are together, particularly in times of crisis, the parent naturally assumes the dominant role. The parent, whether because of experience, awareness, maturity, or otherwise, falls easily and naturally into the position of being the spokesman for the occasion.

This analysis is consistent with long-standing legal principles. When a statement affecting the rights and interests of a defendant are made in his presence under circumstances affording him an opportunity to speak, his silence may be taken as an affirmation of the statement made. *Gayer v. State* (1965) 247 Ind. 113, 210 N.E.2d 852; see also *House v. State* (1989) Ind., 535 N.E.2d 103. The fact that the statement involved in most criminal settings is an accusation as opposed to a statement favorable to the defendant does not destroy the validity of the application of the adoptive admission principle. In *Springer v. Byram* (1893) 137 Ind. 15, 36 N.E. 361, the concept was applied in a civil setting as follows:

If statements are made in the presence and hearing of a person, affecting his rights, and under such circumstances as call for a reply, what he said, or if he failed to say anything, may be proven as in the nature of an admission. *Pierce v. Goldsberry*, 35 Ind. 317; *Puett v. Beard*, 86 Ind. 104; *Surber v. State*, 99 Ind. 71; *Broyles v. State, ex rel. [De Long]*, 47 Ind. 251; *Conway v. State*, 118 Ind. 482 [21 N.E. 285].

In 1 Rice on Evidence, p. 424, the author says: "The act or declaration of another person, and within the observation of a party, and his conduct in relation thereto, is relevant, if, under all the circumstances of the case, he would have been likely to have been affected by the act or the declaration." 137 Ind. at 25, 36 N.E. 361.

There can be no dispute that had the mother been a suspect, her statement would constitute an unequivocal request for an attorney. The question then becomes whether the statement constituted at least an equivocal request with respect to Rider.

Using the "totality of the circumstances" test, we may consider the "conduct and characteristics of the accused and the manner in which the interrogation itself is conducted." *Commonwealth v. Carey* (1990) 407 Mass. 528, 554 N.E.2d 1199 at 1205. The age of the accused is also an appropri-

ate factor. *Fare v. Michael C., supra,* 442 U.S. 707, 99 S.Ct. 2560; *U.S. v. Bernard S.* (1986 9th Cir.) 795 F.2d 749.

These considerations are of value in placing the request of Rider's mother in perspective. Whether as to Rider, the request was equivocal or unequivocal, ambiguous or unambiguous is not determinative.

When the right to counsel has been activated, an accused's post-request responses may not be used to cast doubt upon the clarity of the initial request for counsel. *Smith v. Illinois* (1984) 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488. When the request itself is arguably equivocal, "further questioning thereafter must be limited to clarifying the request until it is clarified." *Towne v. Dugger* (1990 11th Cir.) 899 F.2d 1104, *cert. denied* — U.S. —, 111 S.Ct. 536, 112 L.Ed.2d 546. See also *U.S. v. Fouche* (1987 9th Cir.) 833 F.2d 1284, *cert. denied* (1988) 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218.

In *U.S. v. Gotay* (1988 2nd Cir.) 844 F.2d 971, 976, the implications were discussed as follows:

Even if Gotay's statement were not a clear request for counsel, it was certainly an ambiguous request. On the facts of this case, we need not decide whether it was clear or ambiguous because either way we find that the government's continued interrogation was improper. If the statement is regarded as clear, no further interrogation would be proper under *Smith* unless Gotay initiated the discussion and knowingly, intelligently, and voluntarily waived her rights. 469 U.S. at 95, 105 S.Ct. at 492–93. On the record before us, there is no doubt that Gotay did not initiate the further questioning. On the other hand, if the statement is regarded as ambiguous, only questions designed to clarify the ambiguity would be permitted, ...

In *Sleek v. State* (1986) Ind., 499 N.E.2d 751, Justice Givan speaking for a unanimous Court held:

Appellant's statement ' "[I] feel like I ought to have an attorney around' was not inherently ambiguous and as such was sufficient to invoke his right to have counsel present.

\* \* \* \* \* \*

Even if appellant's request was perceived to be inherently ambiguous, or equivocal in light of the preceding events, any further questioning should have been narrowly limited to clarifying whether appellant actually wished to have counsel present. [Citations omitted] An interrogating officer may not utilize the guise of clarification as a subterfuge for eliciting a waiver of a previously asserted invocation of the right to counsel. [Citations omitted.]

The questions and further statements, made after appellant invoked his right to counsel, went beyond the permissible scope of clarification. They must be interpreted to have been made in an attempt to evoke an incriminating response or to induce appellant to reconsider his invocation of the right to have counsel present. [Citation omitted.]

As stated, the trial court found that even if appellant had unequivocally invoked his right to counsel, he knowingly and intelligently waived that right by nodding his head in an affirmative fashion and signing the waiver form. A valid waiver of the previously invoked right cannot be established by showing only that the suspect responded to further police-initiated interrogation. [Citations omitted].

The fact that questioning about the case had not yet begun is of no moment, for if a suspect "indicates in any manner and *at any stage* of the process that he wishes to consult with an attorney before speaking there can be no questioning". (Original emphasis.) 499 N.E.2d at 754–755.

To the same effect are *Propes v. State* (1990) Ind. 550 N.E.2d 755 (when an accused has indicated his desire for counsel, and instead of breaking off communication, the officer continues going over the waiver of rights form and requesting a signature on it, a subsequent statement is inadmissible); *Moore v. State, supra,* 467 N.E.2d at 712 (when right to counsel has been acti-

vated, a new waiver is ineffective unless defendant himself has initiated a resumption of questioning); *Arizona v. Roberson* (1988) 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704; *Smith v. Endell* (1988 9th Cir.) 860 F.2d 1528, *cert. denied* (1990) —— U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522; and *Cervi v. Kemp* (1988 11th Cir.) 855 F.2d 702.

When Rider's mother stated: *"We* need an attorney", in Rider's presence and under the circumstances of the moment, it constituted an effective triggering of his right to counsel. Whether as to Rider, the request was equivocal or unequivocal, does not alter the fact that Rider's subsequent statements and the evidence seized as a result thereof were inadmissible.

The judgment should be reversed and the cause remanded for a new trial.