THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK ROBERT WROBLEWSKI, Appellant.

Fourth Department, June 4, 1985.

APPEARANCES OF COUNSEL

*Rose H. Sconiers* (*Carolyn Balowitz* of counsel), for appellant.

*Richard J. Arcara, District Attorney* (*Louis Haremski* of counsel), for respondent.

## OPINION OF THE COURT

HANCOCK, JR., J. P.

Defendant was convicted after a jury trial of two counts of felony murder (Penal Law § 125.25 [3]) (the fifth and sixth counts of the indictment) for causing the deaths of Susan Rees and Jason Hanlin, her son, by starting a fire in the two-family dwelling at 88 Spaulding Street in Buffalo where they resided. The jury found defendant not guilty of intentional murder (Penal Law § 125.25 [1]) (counts one and two) and, in view of the convictions for felony murder, did not consider the charges of depraved indifference murder (Penal Law § 125.25 [2]) (counts three and four). The jury also acquitted defendant of arson, second degree (the seventh count), the only arson crime included in the indictment. As the predicate felony for the felony murder counts, the court charged the crime of arson, fourth degree. Arson, fourth degree, however, was not submitted to the jury as a lesser included offense of arson, second degree.

We find no merit to defendant's argument that the evidence adduced at trial was legally insufficient to establish his guilt. Assuming, as we find herein, that defendant's incriminating statements should not have been suppressed, there is ample evidence to support the jury's finding that defendant committed the crime of arson, fourth degree, and that in the course of committing that crime he caused the deaths (Penal Law § 125.25 [3]). In his formal written statement, defendant admitted that he had been at the scene of the fire and had dropped a newspaper

after scorching his hand when his lighter flamed up as he lit a cigarette, but he denied knowing that the paper was on fire. Defendant told his girlfriend in the presence of police that he had set the fire. The proof showed that the fire had been deliberately started, that an accelerant had been used, that defendant had a motive (i.e., to get even with an occupant of the building with whom he'd had a fight), that defendant had been seen in the area and had asked a man on the street for matches prior to the fire, and that on the morning of the tragedy witnesses saw defendant (who lived seven miles away) sitting on the porch of a nearby house watching the fire, laughing at one point, crying at another, and saying, "there go my friends", and, "hey I am sorry".

Defendant, however, aside from sufficiency of the evidence, advances other grounds for reversal including: (1) that his statement, taken at the police station, and the later admission to his girlfriend should have been suppressed as products of an invalid warrantless arrest; and (2) that the court erred in submitting arson, fourth degree, a crime which was not charged in the indictment or as a lesser included offense, as the predicate crime for the felony murder counts. For reasons hereinafter stated, we reject these and other contentions and conclude that there should be an affirmance.

The facts as established in the *Huntley* hearing on defendant's motion to suppress his statements may be briefly stated. On April 1, 1981, 11 days after the fire, Detective Baker and his partner Detective Battaglia met defendant and his brother on the street and asked them about a stolen stereo. Detective Baker told defendant that the arson squad "had put out a pickup for him for questioning" about the Spaulding Street fire. After contacting Investigator McIntee and learning that defendant was still a suspect and wanted for questioning, Baker said to defendant: "Mark, we are going to take a ride over to Precinct 13. The arson investigator is going to meet us there." After patting him down, the officers drove defendant and his brother (who accompanied them at defendant's request) to Precinct 13 in a police vehicle. There, after being given *Miranda* warnings, defendant broke down and said, "I didn't mean to hurt anybody, I loved the baby." Later McIntee and another officer took a written statement from defendant which he signed. Then at defendant's request police took him to see his girlfriend where, the officers testified, he told her he had set the fire.

Detective McIntee, called as a witness by the People, described in detail the investigation the arson squad had conducted concerning the fire at 88 Spaulding Street. His testimony

established that at the time of Baker's and Battaglia's encounter with defendant the police had evidence that the fire was of incindiary origin, that shortly before the fire defendant had asked a passerby for matches, that defendant had been seen sitting on the porch of a nearby house at the time of the fire, that defendant had called the police station and said that he had turned in the alarm for the fire but had not set it, and that prior to the fire defendant had had a fight with one of the building's occupants and had vowed to "get even".

■ The suppression court based its denial of defendant's motion solely on the finding that "the defendant was not in custody when he made the oral admissions". We agree with defendant that the court's finding of lack of custody is in error. The test in determining whether custody has attached is "whether a reasonable person, innocent of any crime, would have felt free to leave" (*People v Harris,* 48 NY2d 208, 215, citing *People v Rodney P.* [*Anonymous*], 21 NY2d 1; *see, People v Yukl,* 25 NY2d 585, 589). Here, the relevant factors include the presence of two police officers and a police vehicle, the pat down of defendant, and Baker's statement to defendant that he was wanted for questioning concerning the arson. His statement, "Mark, we are going to take a ride over to Precinct 13," while not a command in form, clearly signified that Detective Baker had decided that defendant was going to Precinct 13, whether he liked it or not. Thus, there was ample evidence to support a finding of custody.

■ We conclude on this record, however, that the suppression court should properly have denied defendant's suppression motion on a ground it expressly declined to consider: that the statements were not the product of an invalid warrantless arrest because the police had probable cause to arrest defendant for crimes committed in connection with the fire. Accordingly, to the extent necessary to our holding herein, we make such findings as the trial court could have made and as are warranted by the evidence (*see,* CPL 470.15 [1]; *People v Ridgeway,* 101 AD2d 555, 565; *People v Casado,* 83 AD2d 385, 387).

An assessment of probable cause to arrest turns on whether the law enforcement authorities have reason to believe that a crime has been committed by the defendant (*see, People v Carrasquillo,* 54 NY2d 248, 254; *People v Bouton,* 50 NY2d 130, 136). It is not necessary that the arresting officers themselves have probable cause; "it could suffice that someone, somewhere in the investigative hierarchy did" (*People v Bouton, supra,* p 136; *see generally, People v Jennings,* 54 NY2d 518, 522; *People v*

*Havelka,* 45 NY2d 636, 641; *People v Lypka,* 36 NY2d 210, 213-214). Here, at the time of defendant's arrest, the police investigation had produced evidence that the fire was of incendiary origin, that defendant was at or near the scene before and after the fire, that he had a motive, and that he had requested matches; this provides an ample basis for probable cause to believe that defendant had committed the crime.

We turn to the claimed errors during trial. Defendant excepted to the court's decision to use arson, fourth degree, as the underlying felony in its charge on felony murder, but there was no other exception to the charge. As noted, arson, second degree, but not arson, fourth degree, was charged as a count in the indictment. The court, in view of defendant's objection, declined to charge arson, fourth degree, as a lesser included offense of arson, second degree, and thus, the crime of arson, fourth degree, was submitted to the jury not as a separate offense but only in its capacity as a predicate offense for felony murder.[1]

■ On appeal defendant argues that the jury's not guilty verdict for arson, second degree (which requires findings that the defendant intended both to start the fire and to damage the building [Penal Law § 150.15])[2] must, on the record here, be interpreted as a finding by the jury that the defendant did not intentionally start the fire. It follows, then, defendant argues, that the jury could not consistently have found that defendant caused the deaths during the commission of the crime of arson, fourth degree (Penal Law § 150.05 [1]),[3] because an intentional starting of the fire is a necessary element of arson, fourth degree, also. The argument must fail. The verdict of not guilty of arson, second degree, does not establish that the fire was not started intentionally, for a defendant must be acquitted of arson, second degree, even though he starts a fire intentionally if he

---

1. The court did not, as suggested in defendant's brief, make a finding that arson, fourth degree, could not properly be submitted as a lesser included offense if the parties wished it. On the contrary, the record indicates that the court considered charging lesser included offenses of arson, second degree, and on inquiry of the prosecutor and defense counsel was informed that neither desired it.

2. "A person is guilty of arson in the second degree when he intentionally damages a building * * * by starting a fire, and when (a) another person who is not a participant in the crime is present in such building * * * at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility" (Penal Law § 150.15).

3. "A person is guilty of arson in the fourth degree when he recklessly damages a building * * * by intentionally starting a fire" (Penal Law § 150.05 [1]).

does not also intend the resulting damage to the building. He can, however, be found guilty of arson, fourth degree, for causing unintentional damage to a building resulting from a fire that was intentionally started. On the evidence here, the jury could have been convinced that defendant lit the fire on purpose, yet unconvinced beyond a reasonable doubt that he intended any damage to the structure. Defendant rejects this explanation of the acquittal on the arson, second degree, charge, however, and argues that it is highly improbable, given the proof that an accellerant was used, that the jury, if it found that defendant started the fire intentionally, would not also have found that defendant intended damage to the building. We disagree. The evidence on whether an accelerant was used (suggesting that defendant must have intended an extensive burning which would damage the building) was conflicting and defendant's words and actions following the fire could be taken to mean that he had not meant it to spread or to endanger anyone. Thus, a finding that defendant was guilty of felony murder for causing the deaths during the commission of arson, fourth degree (which requires a finding that defendant started the fire intentionally and damaged the building recklessly but not intentionally), is not inconsistent with the acquittal on the arson, second degree, charge.

Nor, under the circumstances here, do we find any error in the court's decision to charge the elements of arson, fourth degree, as the predicate for felony murder despite the fact that the jury was not asked to determine defendant's guilt of arson, fourth degree, as a separately charged substantive crime. It is settled that a felony murder conviction may stand even if the underlying felony which serves as its predicate is not submitted to the jury (*see, People v Scott,* 93 AD2d 754, 755) or if the underlying felony has been dismissed (*see, People v Davis,* 46 NY2d 780; *People v Murray,* 40 NY2d 327, *cert denied* 430 US 948; *see also, People v Gibson,* 65 AD2d 235, *cert denied* 444 US 861, where we upheld the felony murder conviction on the ground that the proof supported a finding that the death occurred in the course of an attempted robbery, although attempted robbery was not charged in the indictment or as a lesser included offense).

Finally, contrary to defendant's contention, we find that the court's submission of arson, fourth degree, as the predicate felony was permissible under counts five and six in the indictment which alleged that the deaths occurred "in the commission of the crime of arson and in the course of and in furtherance thereof" without specifying any degree of the crime of arson.

Under the wording of the felony murder indictment, any degree of arson could have been charged, and it did not effect an illegal amendment of the indictment (*see,* CPL 200.70) for the court to select as a predicate the lowest degree that would support the charge.

We have examined defendant's other arguments on appeal and find them to be without merit. The judgment should be affirmed.

CALLAHAN, DENMAN, O'DONNELL and PINE, JJ., concur.

Judgment unanimously affirmed.