■ THE PEOPLE OF THE STATE OF NEW YORK Respondent, v ANTHONY KING, Appellant.—Judgment unanimously reversed, on the law and facts, and indictment dismissed without prejudice to the People to re-present any appropriate charges to another Grand Jury. Memorandum: Defendant was convicted of second degree assault (Penal Law § 120.05 [2]). The victim was a Syracuse University football player who, along with five other team members, was involved in a confrontation with four men, including the defendant and one Gerevy Sheard. Defendant was convicted of second degree assault for causing physical injury to the victim on November 7, 1982 by hitting him on the head with a baseball bat.

Defendant was first implicated in the crime when a university security guard told Syracuse Police Officer O'Malley that he found defendant's identification in a car believed to be involved in the incident. O'Malley contacted defendant and told him he would "be down to pick him up" to discuss the incident. The two arrived at the police station around 2:00

P.M. O'Malley asked defendant if he had any charges pending against him and defendant replied that he did and was represented by counsel on that charge. Nevertheless, O'Malley continued to question the defendant. Defendant told O'Malley that Gerevy Sheard was with him during the incident. O'Malley went to Sheard's residence and transported him to the station, arriving around 2:30 P.M. Sheard then gave a statement to the police directly implicating defendant in the assault. O'Malley testified at the *Huntley* hearing that defendant was not arrested until after Sheard gave his statement. O'Malley also stated that defendant admitted he had been involved in the incident but denied causing injury to the victim. Defendant was arrested around 6:00 P.M. on November 7, 1982. The next day Betty Adams, a friend of defendant's family, visited defendant in jail. She testified at the *Huntley* hearing that defendant told her he hit the victim with a baseball bat. Adams then gave a statement to the police which was received into evidence at trial. The statement includes a reference by defendant to Adams that Sheard was involved in the crime.

Defendant moved to suppress his statement to Officer O'Malley as well as Sheard's statement to O'Malley implicating defendant in the crime. The hearing court denied the motion, finding that although the police were aware that defendant was represented by counsel on a pending unrelated charge *(see, People v Bartolomeo,* 53 NY2d 225, 229), defendant was not in custody at the time he made the statement *(see, People v Rockefeller,* 106 AD2d 905). The record does not support this finding as a matter of law *(see, People v Waymer,* 53 NY2d 1053, 1054; *People v Yukl,* 25 NY2d 585, 588, *cert denied* 400 US 851). Officer O'Malley's phone call informing defendant that the officer would "be down to pick him up" for questioning signified to defendant that he was going to the police station, like it or not *(see, People v Wroblewski,* 109 AD2d 39, 42). Defendant, an 18-year-old high school student, was given his *Miranda* warnings upon arriving at the police station and was isolated from his family and closely supervised throughout the interrogation by the police. Under these circumstances, a reasonable, innocent person would not have believed he was free to leave. Hence, defendant's statement to Officer O'Malley in which he admitted he and Sheard were involved in the incident should have been suppressed *(People v Bartolomeo, supra).*

The statement from Sheard directly implicating defendant in the assault must also be suppressed because, but for defen-

dant's statement to O'Malley naming Sheard as a participant in the crime, there is not in this record a "very high degree of probability that the evidence in question would have been obtained independently of the tainted source" *(People v Payton,* 45 NY2d 300, 313, *revd on other grounds* 445 US 573; *cf. People v Lanahan,* 96 AD2d 675; *People v Ross,* 88 AD2d 729). The only reference to Sheard, other than in defendant's statement which we now suppress, is the statement defendant made to Ms. Adams while she visited him in jail the day after the incident in which defendant mentioned that Sheard was involved in the crime. Defendant would not have been arrested and incarcerated and thereby placed in the position to make the statement to Ms. Adams, however, had he not first mentioned to O'Malley the day before that Sheard was involved in the crime. It was only after the police interrogated Sheard that defendant was arrested based upon Sheard's statement that defendant was directly involved in the assault.

We cannot find harmless the constitutional errors made by the hearing court in refusing to suppress the statements of defendant and Sheard because on this record there is a reasonable possibility that the errors may have contributed to defendant's conviction *(see, People v Crimmins,* 36 NY2d 230, 237). In view of our holding we need not reach defendant's claim regarding his sentence.

Accordingly, the judgment is reversed and the indictment dismissed, without prejudice to resubmission to the Grand Jury *(see, People v Gonzalez,* 61 NY2d 633, 635). (Appeal from judgment of Onondaga County Court, Burke, J.—assault, second degree, and criminal possession of weapon, fourth degree.) Present—Dillon, P. J., Doerr, Green, O'Donnell and Pine, JJ.