OPINION OF THE COURT
Russell P. Buscaglia, J.
The defendant, on June 10, 2010, was charged by this indictment with murder in the second degree (Penal Law § 125.25). A jury trial was conducted. On January 19, 2011, the defendant was convicted of the lesser included offense of manslaughter in the first degree (Penal Law § 125.20). On March 1, 2011, the defendant was sentenced to a 25-year determinate sentence and five years’ postrelease supervision. Thereafter, the defendant moved pursuant to Criminal Procedure Law § 440.10 (1) (h) to vacate the conviction.
The defendant contends that his conviction was time-barred by the statute of limitations (CPL 30.10 [2] [b]; [4] [a] [i]; People v Knobel, 94 NY2d 226 [1999]). The defendant further contends that his counsels’ failure to raise the statute of limitations issue at trial was ineffective assistance of counsel requiring vacatur of his conviction.
The People oppose the relief requested. The People contend that the defendant has filed an appeal of his conviction and the issues raised in this motion are properly before the Appellate *494 Division, Fourth Department. The People further contend that the defendant’s continuous absence from New York State from August 18, 2002 through September 14, 2005 tolled the statute of limitations and excluding that time, the prosecution was timely. The People further contend that by not raising the statute of limitations issue at trial, the defendant waived it. Finally, the People contend that the defendant not raising the statute of limitations issue at trial was a trial strategy and not ineffective assistance of counsel.
A hearing was conducted pursuant to CPL 440.10. Erie County Probation Officer Richard Robillard and Cheektowaga Police Detective Chris Chojnacki testified for the People. Attorneys Joel L. Daniels and Andrew C. LoTempio, as well as Dawn Tomaski, Lori Krupp and Russell Emery, testified for the defendant.
The People and the defendant stipulated that the crime alleged in this indictment was committed on August 16, 2002 and the defendant left New York State for West Virginia on August 18, 2002. They further stipulated that he remained in West Virginia until June 24, 2003 and was in West Virginia from February 23, 2004 through July 20, 2004 and from October 8, 2004 through September 14, 2005. Finally, they stipulated this indictment reported out on June 10, 2010. In dispute is what state the defendant was in during the time periods in between those stipulated, namely, June 24, 2003 through February 23, 2004 and July 20, 2004 through October 8, 2004.
There are 96 days that are tolled from the statute of limitations from June 10, 2005, which is five years prior to the date this indictment reported out, through September 14, 2005, which is the date the defendant last returned to New York State. Therefore, if the defendant was in New York State during either the first or both of the two time periods that are in dispute, namely, June 24, 2003 through February 23, 2004 (243 days) and July 24, 2004 through October 8, 2004 (80 days), the prosecution was not timely.
The credible evidence at the hearing revealed that the Cheektowaga Police Department was investigating the death of Samuel Ciappa after his body was found in the Sloan Reservoir on August 18, 2002. He had been stabbed and strangled and a cinder block was tethered to his body by a dog leash. The defendant was a person of interest in the death and the detectives were looking for him. On August 22, 2002, they went to the home of defendant’s grandmother, Ms. Tomaski, located at 48 *495 Greenmeadow in Orchard Park, New York. Ms. Tomaski advised them that the defendant had gone to West Virginia and she had no phone or contact information for him. The investigation continued and the defendant was contacted by the Cheektowaga Police Department in West Virginia but no arrest was made.
According to Probation Officer Robillard, on February 8, 2011 he interviewed the defendant as part of the presentence investigation report after his conviction and the defendant told him he lived in West Virginia from late 2002 through early 2004 for a job opportunity. Robillard did not follow up this information with the defendant or independently verify it since he concluded it was background information and not crucial to the presentence investigation report. He did not check addresses, telephone numbers or any other information to corroborate or confirm the defendant’s statement.
According to Detective Chojnacki, he searched employment, the New York State Departments of Motor Vehicles, Taxation, Labor, and Criminal Justice Services and the United States Postal Service records and found nothing except a 1993 Firebird registered in the defendant’s name at his grandmother’s address in Orchard Park, New York. The defendant did have two post office boxes in West Virginia in 2002, 2003 and 2004, but there was no specific information as to what time periods in those years or where in West Virginia they were. There was a dearth of evidence or records officially tying the defendant to New York State or West Virginia yielded by Detective Chojnacki’s research.
Ms. Krupp resided at 44 Greenmeadow, next door to Ms. Tomaski. According to Krupp, the defendant moved back to New York State in the late spring of 2003. She did not recall specific dates or the duration of his stay. She also said the defendant did some work off the books for her husband who is a contractor.
Mr. Emery was a dog breeder who resided in Dayton, New York in Cattaraugus County with his wife and numerous dogs. According to Emery, he had met the defendant when he sold a pitbull to him prior to August 18, 2002. The defendant asked if he could board his pitbulls at Emery’s house because his grandmother wanted them out of her house. Emery told the defendant he could do so if he helped take care of his own dogs and the others Emery was caring for. The defendant agreed to do so and he and his girlfriend, Katie Truesdale, regularly visited Emery’s house for that purpose. Eventually, because of *496 icy winter conditions, the defendant asked if he and Truesdale could move into Emery’s house and Emery agreed. According to Emery, the defendant lived with him from the fall of 2003 through the fall of 2004, although he did not recall specific dates or that the defendant was incarcerated from February 23, 2004 through July 20, 2004.
According to Ms. Tomaski, the defendant and Truesdale arrived at her home in Orchard Park, New York on June 24, 2003 with all their belongings and four or five pitbulls. They moved in with her and her husband, Arthur. She kept a diary during this time and wrote about the activities of her day and the people with whom she interacted as a relaxing ritual before bedtime. Numerous entries in the diaries for the years 2003, 2004 and 2005 mention the defendant and his daily activities in New York State.
Furthermore, Ms. Tomaski allowed the defendant to use her credit card to purchase dog food for his pitbulls that were eventually housed at Emery’s kennel in Cattaraugus County, New York. Credit card statements and receipts memorialized several such purchases. She acknowledged the defendant did return to West Virginia to face unrelated criminal charges and he was incarcerated in West Virginia from February 23, 2004 through July 20, 2004 and again from October 8, 2004 through September 14, 2005. On September 14, 2005, she and her husband picked the defendant up in West Virginia and drove him back to New York State where he has resided ever since. The defendant introduced no official records such as tax, employment or motor vehicle records with his name on them.
Ms. Tomaski was aware of the defendant’s criminal history, including two prior felony convictions. She is the only family the defendant has and she has done and will continue to do whatever is necessary to help him emotionally and financially. She paid for the defendant’s lawyers, posted his bail and provided food, clothing and shelter for him since he was 10 years old. She explained that her diary for the year 2004 had the year 1987 on the cover, yet she still used it not initially appreciating 2004 was a leap year. She kept her diary before 2003 and continued to keep it after 2005. In fact, when Detective Chojnacki visited her home on August 22, 2002 looking for the defendant, she gave him the 2002 diary at his request.
Joel L. Daniels is a prominent criminal defense lawyer in Western New York who has been practicing law since 1964. He had been retained by the defendant early in the investigation *497 and had spoken to the People as early as 2004 and continued to have discussions with the People throughout these proceedings, both pre- and post-indictment. When this indictment was filed on June 10, 2010, the sole count charging murder in the second degree was not subject to any statute of limitations and the issue never arose. During the trial, Michael Hesse, an accomplice, testified that he and the defendant only wanted to beat up the victim. During the charge conference, the People argued that his testimony provided the reasonable view of the evidence warranting the charge down to the lesser included offense of manslaughter in the first degree. The defendant adamantly objected to this on the basis that it was an impermissible variance from the People’s theory of the case set forth in this indictment, the bill of particulars and the proof at trial that resulted in prejudice to the defendant and changed the People’s theory of the case in violation of Criminal Procedure Law § 200.70. No argument was made on the basis of the statute of limitations. According to Daniels, he missed that argument and it got by him.
Andrew C. LoTempio is another prominent criminal defense lawyer in Western New York, who has been practicing law since 1989. He also missed the statute of limitations when arguing against the charge down. It did not enter his mind during his research or in the courtroom. He advised the defendant to plead guilty to manslaughter in the first degree before the trial and later to ask for the charge down, but the defendant agreed to neither. It was LoTempio’s opinion that the defendant had the final say in certain matters such as whether to request a charge down. The defendant was adamant in his insistence on not asking for the charge down despite the risks and his counsel acceded to his demands. When reminded by the People that in 2009 LoTempio raised a similar issue in People v Dupleasis (Erie County, indictment No. 02508-2005) before another justice of this court, LoTempio remembered doing so. He also distinguished the two cases because the Dupleasis indictment charged felony murder and the underlying felonies charged in separate counts were, in his opinion, barred by the statute of limitations. However, the court ruled against the defendant and, therefore, LoTempio not thinking to raise the statute of limitations issue during the charge conference is consistent with inadvertence and not trial strategy.
Hearing
This hearing was granted, notwithstanding the defendant’s ability to raise ineffective assistance of counsel on direct appeal *498 since the basis for such claim raises factual issues and may implicate off the record facts, including reasons for defense counsels’ actions. By entertaining this motion and granting this hearing, the parties have been able to develop these factual matters to enhance their respective arguments. Furthermore, this enables the appellate courts to intelligently and efficiently decide the issues (see Gilbert’s Criminal Practice Annual, Criminal Procedure Law § 440.10 at 821, John M. Castellano, Practice Insights, Analysis [2011 ed]; People v Frazier, 87 AD3d 1350 [4th Dept 2011]).
Statute of Limitations
An indictment need not allege facts showing that the prosecution is not time-barred. If the timeliness of the prosecution is properly raised, the People have the burden of persuasion beyond a reasonable doubt that the prosecution is not time-barred (People v Kohut, 30 NY2d 183 [1972]). This indictment charging the defendant with a sole count of murder in the second degree has no statute of limitations (CPL 30.10 [2] [a]). Manslaughter in the first degree has a statute of limitations of five years (CPL 30.10 [2] [b]). The defendant adamantly opposed a charge down to the lesser included offense of manslaughter in the first degree, solely on the basis that it was a major variance from the People’s theory of the case set forth in this indictment, the bill of particulars and the proof at trial. The People requested the charge down pursuant to Criminal Procedure Law § 300.50 and this court granted the People’s request because it was a legal lesser included offense and there was a reasonable view of the evidence warranting it. Neither party raised the statute of limitations issue and this court did not do so sua sponte.
While manslaughter in the first degree is subject to a five-year statute of limitations, there is a tolling provision of up to an additional five years where a defendant is continuously outside New York State (CPL 30.10 [4] [a] [i]; Knobel, 94 NY2d at 230). It was stipulated that the defendant left New York State for West Virginia on August 18, 2002, two days after the homicide and returned to New York State on September 14, 2005. Cheektowaga police detectives visited the defendant while he was incarcerated during a portion of this time in West Virginia and it was stipulated that the defendant was incarcerated on May 7, 2003, February 23, 2004 through July 20, 2004 and again October 8, 2004 through September 14, 2005. Therefore, the People have sustained their burden of persuasion that the prosecution was timely.
*499 Once the People meet their burden of persuasion pursuant to Criminal Procedure Law § 210.20 (1) (f), the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion (CPL 210.45 [7]; People v Ferrari, 155 Misc 2d 749 [County Ct, Ulster County 1992]).
The People’s witnesses were credible but not compelling regarding the time periods that are in dispute. Probation Officer Robillard was attentive during his presentence investigation report interview with the defendant. When asked where he resided at the time of the crime as part of his background, history, residence and employment, the defendant said he lived in West Virginia from late 2002 to early 2004 for a job opportunity. Probation Officer Robillard did not ask the defendant what job he did or at what address he resided. In fact, he treated the information as ancillary to the presentence investigation report. He did not take any further action to confirm or corroborate the information provided either by asking the defendant directly or independently checking with West Virginia authorities. He did however check official sources relative to the defendant’s criminal history and parole status.
Detective Chojnacki attempted to disprove the defendant’s presence in New York State during the time periods that are in dispute by checking employment records and official government records maintained by the New York State Departments of Motor Vehicles, Taxation, Labor, and Criminal Justice Services and the United States Postal Service to see if the defendant’s name could be found. The only New York State reference to the defendant was a vehicle registration for a 1993 Pontiac Firebird in the defendant’s name at his grandmother’s address in Orchard Park, New York. The defendant had two post office boxes in West Virginia during 2002, 2003 and 2004 but no specific information regarding exactly when or where was provided. There was no indication that the post office boxes existed simultaneously or at different times.
The defendant’s statement itself is not specific with respect to the actual dates he was in West Virginia. Probation Officer Robillard did check certain information for specifics such as the defendant’s criminal history in both New York State and West Virginia. Other than the court records and prison records obtained from West Virginia for a part of the time periods that are in dispute, Probation Officer Robillard did not definitively place the defendant in West Virginia for the entire time period from late 2002 to early 2004.
*500 Detective Chojnacki similarly did not exclude the defendant’s presence in New York State during the time periods that are in dispute. The only link to West Virginia he found was that the defendant had two post office boxes there during 2002, 2003 and 2004, but he did not know their location in West Virginia or if they were continuous throughout those years. His search of the New York State records was helpful but not dispositive. Other than the vehicle registration for the 1993 Firebird in the defendant’s name at his grandmother’s address in Orchard Park, New York, he found no records of the defendant being employed, having a driver’s license or paying taxes in New York State during the time periods that are in dispute. Of particular significance was his visit to Ms. Tomaski’s house on August 22, 2002 to attempt to locate the defendant. He obtained her diary for 2002 to see if it contained information that could lead to the defendant. Her cooperation before anyone knew the statute of limitations would become an issue is probative in rebutting the People’s argument of her alleged fabrication of the diaries since she kept a diary prior to 2002 and she continued to keep one for the years following as well.
The People argued that the defendant’s relationship with his grandmother in, for example, enabling this defendant to live a life of crime over the years, demonstrated a bias and a motive to lie and fabricate entries in the diary to assist him in achieving the relief requested in this motion. However, despite Ms. Tomaski’s natural bias and the People’s argument that she has enabled the defendant to live a life of crime over the years, she is the only witness that provides reliable testimony regarding dates and places. Her daily entries on specific dates referring to the activities of the defendant were credible, reliable and corroborative evidence. She also had credit card statements and receipts that corroborated the defendant’s use of her credit card to buy supplies for his dogs.
Krupp and Emery were helpful but somewhat vague as to dates and details. Krupp recalled the defendant and his dogs being next door and that the defendant worked off the books for her husband in the late spring of 2003 but not much else. Emery recalled the defendant and Truesdale living with his family in Cattaraugus County from the fall of 2003 through the fall of 2004 but conceded he could be mistaken when confronted with the defendant’s incarceration records from West Virginia.
Probation Officer Robillard may have recorded the defendant’s answer to his background question verbatim, but the in *501 formation provided was not followed up and does not sufficiently controvert the defendant’s evidence. Detective Chojnacki’s information, while obtained through due diligence, similarly does not establish the defendant’s absence from New York State and presence in West Virginia during the disputed time periods. The People took the position in their final oral argument that the credibility of the witnesses is best determined by the trier of fact (People v Briggs, 190 AD2d 995 [4th Dept 1993]). The quality of the People’s evidence, while sufficient to meet their burden of persuasion and shift the burden to the defendant, is not compelling in light of the credibility of the defendant’s witnesses. Therefore, the defendant has met his burden by a preponderance of the evidence that the statute of limitations pursuant to Criminal Procedure Law § 30.10 (4) (a) (i) and Knobel is not tolled sufficiently since this court finds that the defendant was in New York State during the time periods in dispute, namely, June 24, 2003 through February 23, 2004 and July 20, 2004 through October 8, 2004, as well as from September 14, 2005 through June 10, 2010.
Accordingly, the statute of limitations for the charge of manslaughter in the first degree had expired prior to June 10, 2010, the date this indictment reported out, and the prosecution was not timely.
Ineffective Assistance of Counsel
The defendant prepared his defense in reliance on the theory of the People in this indictment, the bill of particulars, their opening statement and the proof at trial that the defendant was being charged as a principal who intentionally stabbed the victim with intent to cause his death and was present and involved in his death and the disposal of his body. After this court agreed that a reasonable view of the evidence supported the charge down to the lesser included offense of manslaughter in the first degree over the defendant’s objection and the defendant’s conviction of manslaughter in the first degree, it was not until sometime in July 2011 that the defendant’s counsel were alerted to the statute of limitations issue and (People v Turner, 5 NY3d 476 [2005]) by the defendant himself. In Turner, the People requested a charge down to the lesser included offense of manslaughter in the first degree and the defendant opposed it making the perfunctory argument that there was no reasonable view of the evidence to support it and also to not invite the jury to compromise. The court granted the People’s *502 request, the defendant was convicted of manslaughter in the first degree and he appealed. On appeal, the defendant urged his appellate counsel to raise the statute of limitations issue, but the appellate counsel did not raise it since she felt that the issue was not preserved and was not meritorious. The Appellate Division affirmed the defendant’s conviction (People v Turner, 281 AD2d 568 [2d Dept 2001]). It was after a writ of coram nobis was granted that the Appellate Division considered the statute of limitations issue and reversed the defendant’s conviction on the ineffective assistance of counsel analysis (People v Turner, 10 AD3d 458 [2d Dept 2004]). The Court of Appeals granted leave and held that in the event an attorney failed to properly object to a lesser included offense on the basis the statute of limitations had expired, such failure amounted to ineffective assistance of counsel and the time-barred conviction must be vacated (People v Turner, 5 NY3d 476 [2005]). The statute of limitations cannot be circumvented by appending time-barred charges to charges that are timely (see People v Hughes, 220 AD2d 529 [2d Dept 1995]).
The statute of limitations can be waived if a defendant requests the lesser included offense or acquiesces by seeking a lesser sentence (People v Mills, 1 NY3d 269 [2003]). This defendant did not make such a request. The argument of the People that the defendant waived the statute of limitations issue by opposing the charge down to the lesser included offense for reasons other than timeliness is persuasive if it was a trial strategy by his counsel. However, the defendant’s arguments at trial and at the hearing indicate that the defendant did not want the jury to compromise and convict him of manslaughter in the first degree. The insistence of the defendant himself and the credibility of his counsel belie any trial strategy.
The issues decided in People v Dupleasis were related but dissimilar. Dupleasis was charged in July 2008 with intentional murder and felony murder for crimes allegedly committed in November 1994. In addition to the murder counts, the defendant was charged with the underlying felonies subject to the statute of limitations which supported the felony murder count, namely robbery in the first degree (Penal Law § 160.15) or burglary in the first degree (Penal Law § 140.30). This indictment charges one count of intentional murder, not felony murder and, therefore, no underlying felonies. The analysis is different with respect to the statute of limitations issue in the two cases because a defendant can still be convicted of felony murder even *503 if the underlying felony supporting the count is time-barred, dismissed or the jury acquits the defendant of it (People v Wroblewski, 109 AD2d 39 [4th Dept 1985], affd 67 NY2d 933 [1986]). The fact that the defendant’s motion was denied in Dupleasis supports the defendant’s argument that he failed to raise the statute of limitations issue due to inadvertence rather than as a trial strategy. Furthermore, charging the defendant’s counsel with knowledge of the statute of limitations issue by virtue of the previous trial in 2009 requires similarly charging the People with such knowledge because a member of his office was the adversary of LoTempio in that matter. Yet it was the People who requested the charge down and, although the defendant objected on other grounds, neither party nor this court recognized the statute of limitations issue. The People’s decision to request the charge down could be deemed as ineffective as the defendant’s failure to oppose it on statute of limitations grounds.
In order to find the defense counsel was not ineffective in failing to raise the statute of limitations issue, this court must find that defense counsel were not credible, not truthful and engaged in gamesmanship and a strategy to reduce the defendant’s exposure and avail him of the prohibition against double jeopardy (Strickland v Washington, 466 US 668 [1984]; People v Caban, 5 NY3d 143 [2005]). The People have made such argument and asked this court to speculate that the jury may have convicted the defendant of murder in the second degree had they not been given the option of considering the lesser included offense. This argument fails because the defendant himself insisted that the jury only consider murder in the second degree and because of the credibility of his counsel. The decision not to request any lesser included offenses rested with the defendant (see People v Petrovich, 87 NY2d 961 [1996]). While this court has doubts about the wisdom of using statistics in this analysis, the People argued that when the jury is faced with one charge, there is a 50% probability that the defendant will be convicted. When a lesser included offense is submitted, the chance for conviction increases to 66.67%. The People sought the lesser included offense to increase their chances of conviction after considering the proof at the trial.
The defendant wanted to limit the probability of conviction to 50% and his decision to oppose the lesser included offense evinces such intent. An effective attorney would have achieved the intended result simply by raising the statute of limitations issue. The defendant’s counsels’ failure to do so constituted *504 ineffective assistance of counsel (People v Turner, 5 NY3d 476 [2005]).
The People’s argument that defense counsel were not ineffective because a reasonable trial attorney might actually have welcomed the charge down to manslaughter in the first degree is ill-founded. A defendant who thinks his chances of acquittal are small may welcome giving the jury an opportunity for a compromise verdict (People v Boettcher, 69 NY2d 174 [1987]). LoTempio’s advice to the defendant was to plead guilty to manslaughter in the first degree prior to trial and during trial, to seek the charge down. The objection to the charge down was made at the insistence of the defendant himself. Had the People not sought the charge down, the issue would have been moot, but since they did, it was incumbent on defense counsel to ensure their client’s wishes were effectuated. Their failure to raise a defense as dispositive as the statute of limitations in the absence of a reasonable explanation for it cannot be reconciled with the defendant’s constitutional right to the effective assistance of counsel (People v Turner, 5 NY3d 476 [2005]; see also People v Harris, 97 AD3d 1111 [4th Dept 2012]).
Finally, by operation of law and based upon this court’s charge to the jury, the defendant’s conviction of manslaughter in the first degree as a lesser included offense is deemed an acquittal of murder in the second degree (CPL 300.50 [4]; People v Fuller, 96 NY2d 881 [2001]; Boettcher, 69 NY2d at 181).
Accordingly, the defendant’s motion is granted in all respects, the defendant’s conviction of manslaughter in the first degree (Penal Law § 125.20) is vacated and this indictment is dismissed.